IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 23-13407
LT NO. 9:19-cv-80517-BER

LAUREN WOODS,

*Plaintiff-Appellant*,

v.

PROGRESSIVE AMERICAN INSURANCE COMPANY,

*Defendant-Appellee*.

BRIEF OF PLAINTIFF-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Stephen A. Marino, Jr. | Elliot B. Kula |
| Michal Meiler | William D. Mueller |
| VER PLOEG & MARINO, P.A. | KULA & ASSOCIATES, P.A. |
| 100 S.E. Second St., Ste. 3300 | 11900 Biscayne Blvd., Ste. 310 |
| Miami, Florida 33131 | Miami, Florida 33181 |
| Telephone: (305) 577-3996 | Telephone: (305) 354-3858 |
| Facsimile: (305) 577-3558 | Facsimile: (305) 354-3822 |
| smarino@vpm-legal.com | eservice@kulalegal.com |
| mmeiler@vpm-legal.com | elliot@kulalegal.com |
| | william@kulalegal.com |

*Co-Counsel for Appellant*

*Woods v. Progressive Am. Ins. Co.*

<u>**Case No. 23-13407-A**</u>

**CERTIFICATE OF INTERESTED PERSONS
AND
<u>CORPORATE DISCLOSURE STATEMENT</u>**

Plaintiff-Appellant, Lauren Woods, submits this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1. Boyd Richards Parker & Colonnelli, PL – *Attorney for Defendant/Appellee*

2. Daniel, W. Aaron, Esq. – *Attorney for Plaintiff/Appellant*

3. Duke, Esq., Adam A. – *Attorney for Defendant/Appellee*

4. Fard, Esq., Sean M. – *Attorney for Defendant/Appellee*

5. Gordon & Partners, P.A. – *Attorneys for Defendant/Appellee*

6. Hanson, Esq., Mark R. – *Attorney for Plaintiff/Appellant\*

7. Kula & Associates, P.A., *Attorneys for Plaintiff/Appellant*

8. Kula, Esq., Elliot B. – *Attorney for Plaintiff/Appellant*

9. Marino, Esq., Stephen A., Jr. – *Attorney for Plaintiff/Appellant*

10. Meiler, Esq., Michal – *Attorney for Plaintiff/Appellant*

11. Mueller, Esq., William D – *Attorney for Plaintiff/Appellant*

12. Progressive American Insurance Co. – *Defendant/Appellee*

13. Reinhart, Hon. Bruce E. – *U.S. Magistrate Judge, Southern District of Florida*

*Woods v. Progressive Am. Ins. Co.*

<u>**Case No. 23-13407-A**</u>

**CERTIFICATE OF INTERESTED PERSONS**

**AND**

<u>**CORPORATE DISCLOSURE STATEMENT**</u>
(Continued)

14.    Rocha, Esq., Alessia A. – *Attorney for Plaintiff/Appellant*

15.    Richards, Esq., John Hudson – *Attorney for Defendant/Appellee*

16.    The Progressive Corporation (NYSE: PGR)

17.    Veliz, Esq., Derek L. – *Attorney for Defendant/Appellee*

18.    Ver Ploeg & Marino, P.A – *Attorneys for Plaintiff/Appellant*

19.    Woods, Lauren – *Plaintiff/Appellant*

20.    Young, Bill, Boles, Palmer, Duke & Thompson, P.A. – *Attorneys for Defendant/Appellee*

Pursuant to Federal Rule of Appellate Procedures 26.1 and Eleventh Circuit Rules 26.101 through 26.1-3, Plaintiff/Appellant, Progressive American Insurance Company is an indirect, wholly-owned subsidiary of The Progressive Corporation, which is publicly traded on the NYSE under the symbol PGR. No other publicly held corporation owns ten percent (10%) or more of Progressive's stock.

_____ /s/ **Elliot B. Kula** _____
Elliot B. Kula

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ......................................................C-1

TABLE OF CITATIONS .......................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ...............................................vi

STATEMENT OF JURISDICTION..............................................................1

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE....................................................................2

     I.      COURSE OF PROCEEDINGS. ..........................................................2

          A.     The Complaint and Answer. .....................................................2

          B.     The Trial on Ms. Woods' Bad Faith Claim. .............................3

          C.     The Final Judgment Entered in Progressive's
                Favor. ...................................................................................9

          D.     Motion for New Trial.................................................................9

          E.     Appeal. ...................................................................................9

     II.     STATEMENT OF THE FACTS..........................................................10

          A.     The Automobile Accident.........................................................10

          B.     The Breach of Contract Claim and Resulting Jury
                Verdict....................................................................................10

          C.     Bad Faith Litigation Ensued. ...................................................10

     III.     STATEMENT OF THE STANDARD OF REVIEW.........................11

SUMMARY OF ARGUMENT ...............................................................12

## TABLE OF CONTENTS
### (Continued)

**Page**

ARGUMENT ....................................................................................14

I.    THE DISTRICT COURT ERRED BY REFUSING TO
ADMIT THE BREACH-OF-CONTRACT VERDICT
OR INSTRUCT THE JURY THAT MS. WOODS
FAVORABLY SETTLED HER CLAIM. .........................................14

    A.    Florida's Bad Faith Standard. ....................................................14

    B.    The District Court Applied the Wrong Legal
Standard to Ms. Woods' Bad Faith Claim —
Ignoring the Totality of the Circumstances
Standard. ...................................................................................22

    C.    The District Court's Exclusion of the Underlying
Breach-of-Contract Verdict — A Necessary
Predicate to the Jury's Determination of Bad
Fath — Forced a Trial that was Antithetical to
Florida's Bad Faith Laws............................................................26

    D.    The District Court's Evidentiary Ruling and Jury
Instruction Disregarded Stipulated Evidence and
Prejudiced Ms. Woods (it was a Rug Pull)................................30

CONCLUSION ...................................................................................36

ii

# TABLE OF CITATIONS

**Page**

## *Cases*

*Alper Auto., Inc. v. Day To Day Imports, Inc.*,
   21-14236, 2022 WL 3418643 (11th Cir. Aug. 17, 2022) .................................... 32

*Baldwin v. Express Oil Change, LLC*,
   87 F.4th 1292 (11th Cir. 2023) ............................................................. 25

*Batchelor v. Geico Cas. Co.*,
   6:11-CV-1071-ORL-37, 2014 WL 3906312 (M.D. Fla. June 9, 2014) ....... 22, 29

*Berges v. Infinity Ins. Co.*,
   896 So. 2d 665 (Fla. 2004) ................................................. 15, 18, 24

*Boston Old Colony Ins. Co. v. Gutierrez*,
   386 So. 2d 783 (Fla. 1980) ................................................ 16, 24

*Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law
   v. Martinez*,
   561 U.S. 661 (2010) ...................................................................... 32

*Cingari v. First Protective Ins. Co.*,
   4D2022-2376, 2024 WL 24798 (Fla. 4th DCA Jan. 3, 2024) ............... 21, 29, 35

*Espinoza v. Galardi S. Enterprises, Inc.*,
   772 Fed. Appx. 768 (11th Cir. 2019) ................................................... 11

*Fid. & Cas. Co. of New York v. Cope*,
   462 So. 2d 459 (Fla. 1985) ................................................ 18, 20

*Fridman v. Safeco Ins. Co. of Illinois*,
   185 So. 3d 1214 (Fla. 2016) ....................................................... passim

*Furcron v. Mail Centers Plus, LLC*,
   843 F.3d 1295 (11th Cir. 2016) ....................................................... 11

*G.I.C. Corp., Inc. v. United States*,
   121 F.3d 1447 (11th Cir. 1997) ................................................ 32, 33

# TABLE OF CITATIONS
(Continued)

**Page**

*GEICO Gen. Ins. Co. v. Paton*,
  150 So. 3d 804 (Fla. 4th DCA 2014)......................................................... 21, 22, 29

*Harvey v. GEICO Gen. Ins. Co.*,
  259 So. 3d 1 (Fla. 2018)............................................................................. 16, 17, 24

*Henry v. C.I.R.*,
  362 F.2d 640 (5th Cir. 1966) ...............................................................................35

*Hinson v. Titan Ins. Co.*,
  656 Fed. Appx. 482 (11th Cir. 2016)....................................................................15

*Lopez v. Allstate Fire & Cas. Ins. Co.*,
  14-20654-CIV, 2015 WL 5269687 (S.D. Fla. Sept. 10, 2015) ...........................16

*Lund v. Am. Motorists Ins. Co.*,
  797 F.2d 544 (7th Cir. 1986) ................................................................................24

*Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*,
  939 F.3d 1145 (11th Cir. 2019) ..................................................................... 25, 30

*Milling v. Travelers Home & Marine Ins. Co.*,
  311 So. 3d 289 (Fla. 2d DCA 2020) .............................................................. 19, 27

*Moore v. GEICO Gen. Ins. Co.*,
  633 Fed. Appx. 924 (11th Cir. 2016)....................................................................15

*Noel Shows, Inc. v. United States*,
  721 F.2d 327 (11th Cir. 1983) ..............................................................................33

*Novoa v. GEICO Indem. Co.*,
  542 Fed. Appx. 794 (11th Cir. 2013)....................................................................16

*Powell v. Prudential Prop. & Cas. Ins. Co.*,
  584 So. 2d 12 (Fla. 3d DCA 1991) .......................................................................26

*Safeco Ins. Co. of Illinois v. Fridman*,
  117 So. 3d 16, 27 (Fla. 5th DCA 2013) ................................................................20

iv

## TABLE OF CITATIONS
(Continued)

**Page**

*State Farm Mut. Auto. Ins. Co. v. Laforet*,
658 So. 2d 55 (Fla. 1995)............................................................... 16, 17, 19, 24

*United States v. Henderson*,
409 F.3d 1293 (11th Cir. 2005) ........................................................ 11, 14, 23, 26

*United States v. Morris*,
20 F.3d 1111 (11th Cir. 1994) ............................................................................11

*United States v. Varner*,
13 F.3d 1503 (11th Cir. 1994) ...........................................................................34

*Williams v. Reckitt Benckiser LLC*,
65 F.4th 1243 (11th Cir. 2023) .................................................................... 25, 30

### *Statutes*

§ 624.155(1)(b)(1), Fla. Stat. (2023) ........................................................2, 10, 14, 25

§ 627.727(9), Fla. Stat. (2023).......................................................................... 18, 19

28 U.S.C. § 1291 (2023) .............................................................................................1

28 U.S.C. § 1332 (2023) .............................................................................................1

### *Rules*

Fed. R. Civ. P. 16(e).................................................................................................33

### *Other Authorities*

83 C.J.S., Stipulations § 93 (2000) ..........................................................................32

## STATEMENT REGARDING ORAL ARGUMENT

At issue in this appeal is the district court's interpretation of Florida's bad faith laws, and its application of those laws to a discrete and fundamental evidentiary ruling. The district court refused to allow the jury in a bad faith litigation to be informed or otherwise to instruct the jury that the Plaintiff-Appellant (the insured) had prevailed in her underlying breach-of-contract claim against the Defendant-Appellee (the insurer) but permitted the Defendant-Appellee to effectively retry the underlying case. The net effect was an erroneous application of Florida's bad faith laws, forcing Ms. Woods to retry her underlying breach-of-contract claim divested of the jury resolution. Oral argument will be beneficial.

## STATEMENT OF JURISDICTION

The district court properly exercised subject-matter jurisdiction over this case under 28 U.S.C. § 1332 (2023), because the parties are diverse and the amount in controversy exceeds the jurisdictional threshold.  DE:1.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 (2023), because this appeal arises from a final judgment of the district court.

## STATEMENT OF THE ISSUES

In this bad faith action, the district court precluded the introduction of evidence from trial that Ms. Woods obtained a judgment in excess of her policy limits against Progressive in the antecedent breach-of-contract case, which:

1. Was based on the district court's misapplication of the legal standard for a Florida bad faith claim, favoring a subjective standard as opposed to the proper totality of the circumstances standard;

2. Was based on the district court's misapplication of Florida's bad faith law which considers the underlying verdict a critical piece of information for determining *liability* not just damages in a bad faith case and prohibits the retrying of the underlying claim;

3. Disregarded the parties' pretrial stipulations without reference to the manifest injustice standard.

1

## STATEMENT OF THE CASE

## I.    COURSE OF PROCEEDINGS.

### A.    The Complaint and Answer.

Plaintiff-Appellant, Lauren Woods, was in a car accident with an underinsured motorist that resulted in significant and permanent injuries. DE:1. She filed a claim with her own insurer, Defendant-Appellee, Progressive American Insurance Company ("Progressive"), invoking the underinsured motorist (sometimes referred to as "UM") provision of her policy. *Id.* After Progressive refused to pay the full UM benefit, Ms. Woods served two Civil Remedy Notices under Florida Statute § 624.155, and filed a two count complaint against Progressive: (i) the initial breach of contract claim against Progressive and the (ii) subsequent bad faith claim in Florida's Fifteenth Judicial Circuit, located in Palm Beach County. DE:1. Progressive removed Ms. Woods' complaint to the United States District Court for the Southern District of Florida because Progressive's principal place of business is in Ohio. *Id.*

As appropriate, Ms. Woods prosecuted her initial claim while the second awaited resolution of the first. The parties tried the breach of contract claim and a jury awarded Ms. Woods damages in excess of the policy's limit. DE:87. The jury awarded Ms. Woods $545,760.00 — significantly more than the $300,000 policy limit. Following the jury's verdict, Ms. Woods began prosecuting her claim for bad faith against Progressive.

Progressive filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint, denying the allegations that it acted in bad faith when it failed to pay the

2

policy limits.  DE:122.  Progressive argued it did not tender the underinsured motorist coverage limit of $300,000 because it was "not justified based upon the documents and knowledge Progressive possessed at such time."  DE:122 at 2.

**B.  The Trial on Ms. Woods' Bad Faith Claim.**

Prior to trial, the parties stipulated certain undisputed facts for trial purposes. Among the stipulations, the parties agreed that one of the "uncontested facts which will require **no proof** at trial" would be:

1. On October 15, 2021, the jury rendered a verdict in favor of Ms. Woods and against Progressive in the amount of $545,760.

2. The jury determined that Ms. Woods suffered a permanent injury as a result of the accident.

3. On November 19, 2021, Final Judgment was entered in favor of Ms. Woods in the amount of $412,208.17.

DE:192 (emphasis added).

Consistent with these stipulations, the parties filed a joint exhibit list which included the underlying breach of contract verdict.  DE:217, Ex. C.  This is to say, prior to trial, there was no dispute that the underlying verdict would feature at trial.[1]

---

[1] The district court's unanticipated deviation at trial from these stipulations is an issue on appeal.

### DISTRICT COURT'S INITIAL EVIDENTIARY RULING
### RE: EXCESS VERDICT

On September 11, 2023, the parties began a four-day trial on the bad faith claim.  DE:228, DE:229; DE:230; DE:231 (the transcripts of trial).[2]  Central to the resolution of this appeal is a ruling made by the trial court at the start of trial; namely, the trial court's exclusion of the underlying breach-of-contract verdict from evidence despite the stipulations described above.  DE:228 at 13–25.

Concerned with relitigating the breach-of-contract claim and complying with the district court's order in limine prohibiting such action (DE:196), Ms. Woods asked the district court to redact a portion of Progressive's claim notes wherein Progressive's employees recorded their daily notes (impressions, observations, etc.) of the previous breach-of-contract trial.  DE:228 at 10–13.

To that end, the district court asked Ms. Woods to articulate when did Progressive's duty to act in good faith end—was Ms. Woods, in other words, "going to argue that up to and including to the end of the trial and until today they have continued to act in bad faith."  DE:228 at 13.  Because, the district court stated, "if that's the case, I think it's probably relevant that they heard what they heard and acted on it."  *Id*.

Progressive chimed in, acknowledging that "the verdict form itself is a joint exhibit" that the parties "are going to introduce" into evidence.  DE:228 at 14.  Progressive believed Ms. Woods was going to use the "verdict that's in excess of

---

[2] The parties agreed to allow a jury to determine Progressive's liability for bad faith conduct but to otherwise allow the district court to determine damages if Progressive was found liable.  DE:204.

the policy limits" to argue that Progressive "undervalued the claim because a jury ultimately determined that the claim was worth more than what Progressive offered." *Id*. For that reason, Progressive wanted the jury to hear "what led to that verdict and what the jury considered" in that underlying trial. DE:228 at 15.

At that point, the district court, on its own, questioned the reasoning for allowing the jury to see the underlying verdict:

> THE COURT: Again, why -- I mean, if it's a joint exhibit, I will probably admit it. But why does the jury need to see the verdict form? The only issue in this case is whether, from what you have just told me, up until the day the trial started, had Progressive acted in good faith or bad faith. Why does it matter what the jury said to this jury? It matters to me in terms of entering a damages judgment later. But why does it matter to this jury?
>
> …
>
> THE COURT: Why do they even need to know that? Why can't I just tell them the only question before the jury in this case is whether Progressive has handled Ms. Woods's claim in good faith? Why do they need to know anything about an excess verdict? That only goes to damages.

DE:228 at 16–17.

The parties argued the point and the district court decided to exclude the underlying verdict from evidence in favor of a jury instruction that stated that the "parties agree there has been an excess judgment" but without telling them the amount of that judgment. DE:228 at 19, 24. The court reassured that the issue would be revisited as necessary. *See, e.g.,* DE:228 at 148–152, 155–159.

### DISTRICT COURT'S REVISITING OF EVIDENTIARY RULING
### RE: EXCESS VERDICT

Thereafter, the parties provided their opening statements to the jury. Progressive, of note, provided a full account of its actions during the litigation of the breach-of-contract claim. DE:228 at 195–200. Progressive described its actions "once it got into suit" and following information it learned after "discovery." DE:228 at 195. Among that information, Progressive described facts that were presented to the jury in the underlying case, including:

- Information from a Dr. Campbell, who treated Ms. Woods' back injuries, that "there was no real change in the MRIs before the accident and after the accident." DE:228 at 196.

- Information from a Dr. Pfeiffer, who reviewed the MRIs and "concluded that the changes in her spine were preexisting and degenerative, and not caused by the accident." *Id*.

- Information from a Dr. Brodner, who examined Ms. Woods and "concluded, in his opinion, [Ms. Woods] had not been permanently injured as a result of this accident, that the surgeries, the treatment were not caused by this accident." *Id.*

And Progressive told the jury that despite this information, it continued to increase its offers to settle the case, which were rejected by Ms. Woods. *Id*. at 197.

At no point was the jury told that Ms. Woods prevailed on her claim for a breach of contract in front of another jury who found that her damages far exceeded the amounts offered by Progressive.

Following Progressive's opening, Ms. Woods asked the trial court to allow the underlying verdict in given the allusions Progressive made to the evidence and testimony in the underlying case:

> MR. MARINO: Second thing is, after hearing that whole narrative from Mr. Duke, I don't know how you can't tell the jury that there was an excess verdict, Judge. We don't have to get into a number. But after hearing that, I don't know how -- having conditioned the jury in opening argument about all the details like that, I don't know how you cannot tell the jury, okay, but at the end of the day, there was a verdict in excess of all of available coverage.

DE:228 at 200.

The district court disagreed.  DE:228 at 201.  The district court ruled that because, in its view, the ultimate determination of bad faith centered on "what the insurer, in good faith or not, believed the facts would be would not be," the fact that "there's an excess judgment is [not] relevant to whether they acted in good faith or not."  DE:228 at 202.  And the district court found nothing wrong with Progressive stating what it believed the evidence in the underlying case demonstrated (without providing the further context of the jury's verdict):

> THE COURT: No, he went into the -- they. As they looked at the file, they concluded there was no causation. That's a complete and absolute defense, if they, in good faith, reached that conclusion. The jury may have disagreed with them. There may in fact have been causation, but if they had a good-faith belief it didn't, that's a defense. So I'm going to overrule that objection. No, I don't think that opens the door to anything.

DE:228 at 202.

7

## DISTRICT COURT'S EVOLVING EVIDENTIARY RULING
## RE: UNDERLYING VERDICT

As the trial proceeded, the district court then announced that the jury would not be instructed at all that Ms. Woods prevailed in the underlying litigation against Progressive (much less that there was an excess judgment reached by the original jury. DE:229 at 5. Ms. Woods renewed her request for the instruction or to admit the verdict into evidence. *Id*. And she established her record as follows:

> That excess verdict part is why we are here, and I think the jury is entitled to know that and I think we are entitled to present that to the jury, because otherwise, we don't have the ability to give this jury a reason for why we are here -- that we are here. They are going to be speculating, are we supposed to decide what her injuries are valued at today sitting here? Are we supposed to decide if she's owed UM benefits? No. That's been decided, and this jury needs to know that.
>
> …
>
> So the jury gets instructed, you are not here to determine damages, but I think they are also entitled to know that this case went to trial. Because our theory of the case, as the plaintiff bringing this lawsuit, is that Progressive said if you want the limits, you have to sue us to get it, and that's what they made us do. So we sued them to get those limits. Whether that was in good faith or not is what the jury decides.
>
> That last part, we sued them to get them, to get the limits, and the jury told them they have to pay this limit or there is a judgment in excess of the policy limit, that's an important part of our theory of our case. I don't think that we could proceed without the jury actually knowing that and understanding that. And Fridman addressed this by saying you get a binding determination in the underlying case and then you go on to bad faith.

DE:229 at 6–7.

But the district court held firm, ruling that it would not "allow either party to mention the fact that there is an underlying judgment." DE:229 at 12.

8

**C.  The Final Judgment Entered in Progressive's Favor.**

The jury returned a verdict in favor of Progressive finding that Ms. Woods did not prove, by a preponderance of the evidence, that Progressive acted in bad faith in failing to settle her insurance claim.  DE:224.

**D.  Motion for New Trial.**

Ms. Woods moved for a new trial based on several evidentiary rulings, the net effect of which precluded her from admitting into evidence the fact that an excess judgment was entered against Progressive in the underlying UM benefits case. DE:234.  MS. Woods argued that the rulings ran contrary to the trial court's pre-trial in limine orders, the parties' stipulations, and the prevailing law on bad faith, thereby to allow Progressive the opportunity to relitigate the underlying case while, simultaneously, depriving Ms. Woods the opportunity to present her full case to the jury.  DE:234 at 9-10.

Progressive responded, claiming that "at no point during trial" did it attempt to relitigate "damages established in the Underlying Suit." DE:239.  In Progressive's view, "the focus" of the bad faith trial was "not whether the insurer ultimately paid the amounts due under the policy, but whether it acted reasonably in evaluating the claim prior to the determination of damages."  DE:239 at 7.

The district court denied Ms. Woods' motion for new trial.  DE:242.

**E.  Appeal.**

From the final judgment, and eventually the denial of her motion for new trial, Ms. Woods appealed.  DE:235.

## II.    STATEMENT OF THE FACTS.

The following brief statement of the facts is provided for context.

### A.    The Automobile Accident.

Ms. Woods was in a car accident with an underinsured motorist, sustaining significant and permanent injuries.  DE:1.  She filed a claim with her own insurer, Progressive, invoking the UM provision of her policy.  *Id*.  Progressive refused to pay the full UM benefit, prompting Ms. Woods to serve two CRNs under Florida Statute § 624.155 and file suit for breach of the insurance policy.  DE:1.

### B.    The Breach of Contract Claim and Resulting Jury Verdict.

Ms. Woods took her breach of contract claim to trial and the jury awarded her $545,760.00 — significantly more than the $300,000 policy limit.  DE:87.

### C.    Bad Faith Litigation Ensued.

After the final judgment in the underlying litigation (the jury's verdict constrained by the policy limits), Ms. Woods prosecuted her bad faith case, alleging that Progressive failed to act in good faith when it:

1. Failed to make payment of the policy limits, in light of the underinsured tortfeasor's clear liability and the severity of Ms. Woods' injuries;

2. Failed to act fairly and honestly and with due regard for Ms. Woods' interests;

3. Improperly handled her claim;

4. Refused to settle the claim in a timely manner.

DE:1 at 18.

10

### III.    STATEMENT OF THE STANDARD OF REVIEW.

This Court reviews for abuse-of-discretion the district court's evidentiary rulings, such as the district court's ruling excluding the breach-of-contract verdict from evidence. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). Under this standard, the Court will affirm "unless the district court has made a clear error of judgment or has applied an incorrect legal standard" and the error "affects the substantial rights of the parties." *Id*. *See also Espinoza v. Galardi S. Enterprises, Inc.*, 772 Fed. Appx. 768, 770 (11th Cir. 2019). To that extent, if the district court's evidentiary ruling is based on an erroneous view of the law, that constitutes an abuse of discretion per se. *See United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005).

Likewise, the district court's decision to walk back its promise to instruct the jury of the breach-of-contract verdict is reviewed for an abuse of discretion. *See United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994). Generally, a refusal to give a requested instruction is an abuse of discretion if: (1) the instruction is correct; (2) the court did not address the substance of the instruction in its charge; and (3) the failure to give the instruction seriously impaired the defendant's ability to present an effective defense. *Id*. at 1115–16.

11

## SUMMARY OF ARGUMENT

While the district court's decision to preclude the parties from mentioning the underlying breach of contract verdict may, at first blush, appear to be an evidentiary ruling in the ordinary course, the ruling was the product of a misapprehension of Florida law and had the net effect of undermining Ms. Woods' ability to substantiate her insurance claim in the first place. Which is to say, the rulings effectively required Ms. Woods to re-prove the liability and damages conclusively established in the underlying action, something that cuts against the most fundamental principles of Florida bad faith law.

At trial, the district court allowed Progressive to discuss, at length, the evidence discovered in the underlying case and ultimately shown to (and rejected by) that jury. That included Progressive's adjusters giving their subjective opinion on the value of Ms. Woods' injuries and the credibility of her treating physicians— all of which were credibility arguments made and rejected by the first empaneled jury. Meanwhile, Ms. Woods was not allowed to rebut any of this by pointing out the most relevant fact at all: a jury discredited Progressive's position and found that her damages far exceeded the insurance policy limits. Her testimony was limited by the district court to any information that she directly (not through her attorneys) told Progressive's adjusters. That was a fundamental misapprehension of the bad faith proceedings and constitutes an abuse of discretion per se. *See Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214, 1224–1225 (Fla. 2016) (the Florida Supreme Court holding that "it is obvious that" the determination of liability and damages in an action to determine insurance benefits is "binding in [a subsequent] bad faith

12

action"; and explaining that the failure to afford such affect to the resolution in the underlying action placed "an inexplicable burden on [the plaintiff] to prove [her] case[] twice; and caus[ed] a great deal of judicial inefficiency").

Compounding the problem, the fact of the underlying verdict was a fact and evidence stipulated to by the parties prior to trial. The district court disregarded that stipulation, on its own accord, without determining that any of the parties would suffer manifest injustice as is required under this Court's law. Given the effect that the preclusion of this fact had in trial, the district court's rug-pulling prejudiced Ms. Woods' ability to effectively try her claim.

Based on this legally and procedurally erroneous ruling, Ms. Woods requests that the Court reverse and remand for a new and fair trial.

## ARGUMENT

### I.  THE DISTRICT COURT ERRED BY REFUSING TO ADMIT THE BREACH-OF-CONTRACT VERDICT OR INSTRUCT THE JURY THAT MS. WOODS FAVORABLY SETTLED HER CLAIM.

#### A.  Florida's Bad Faith Standard.

Florida's law on bad faith claims governed the district court's decision with respect to informing the jury on the underlying breach-of-contract action — either through admission of the excess verdict as evidence or by instruction.  To be sure, that was an exercise of the district court's discretion.  But two different (yet related) bad faith legal standards inform this Court's assessment of the district court's exercise of discretion; and as will be shown, the district court's exercise of that discretion derived from a misapprehension of and a departure from the legal standards.  And of course, the district court's misapprehension of and departure from the legal standards, renders its exercise of discretion an abuse per se.  *See Henderson*, 409 F.3d at 1297.

#### FLORIDA EMPLOYS AN OBJECTIVE TOTALITY OF THE CIRCUMSTANCES STANDARD

Florida's bad faith standard is guided by the relevant language in section 624.155(1)(b)(1), Florida Statutes, that allows for the bringing of a bad faith claim against an insurer when the insurer commissioned the following act:

> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.

§ 624.155(1)(b)(1), Fla. Stat. (2023). That language is replicated in Florida's Bad Faith Jury Instruction, 404.4, which articulates a "prudent person" standard that must

14

be applied in all cases where the bad faith allegation revolves around the insurer's failure to settle the insured's claim:

> Bad faith on the part of an insurance company is failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward [its policyholder] [its insured] [an excess carrier] and with due regard for [his] [her] [its] [their] interests.

Fla. Stnd. Jury Instr. 404.4. *See also* DE:193 at 25. This instruction does not require that the insured prove that the insurer subjectively intended to act in bad faith. Rather, it employs the objective standard that requires consideration "under **all** the circumstances." *Id.*

That is consistent with Florida law, which articulates an objective totality of the circumstances test: In Florida, "the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004) (citations omitted). That standard requires an assessment of each case's "own facts" and an application of the objective assessment of whether the insurer acted "in good faith with due regard for the interests of the insured." *Id.*

"'Good faith' generally means that an insurer must reasonably act in the best interests of its insured." *Hinson v. Titan Ins. Co.*, 656 Fed. Appx. 482, 485 (11th Cir. 2016) (*citing Berges*, 896 So. 2d at 677). Thus, "one of the circumstances relevant to the bad-faith inquiry is the insurer's overall level of competence . . . [and] an insurer's negligence is a relevant consideration that affects the overall assessment of the insurer's conduct." *Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924, 928

15

(11th Cir. 2016) (*citing Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) for the proposition of that "[b]ecause the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.").

An insurer cannot escape liability where it fails to act honestly and fairly towards its insured and with due regard for the insured's interest. "In order for [the insureds] to prevail, they need only prove that, under the totality of the circumstances . . . [the insurer] failed to settle, 'where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.'" *Lopez v. Allstate Fire & Cas. Ins. Co.,*, 14-20654-CIV, 2015 WL 5269687 (S.D. Fla. Sept. 10, 2015) (*citing Boston Old Colony*, 386 So. 2d at 785).

Consider, most prominently, the Florida Supreme Court's decision in *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1 (Fla. 2018), which rejected the application of a more subjective standard employed by a federal court. *Id*. at 7.  In the federal case used as an exemplar in *Harvey*,[3] this Court stated that "[t]o fulfill the duty of good faith, an insurer does not have to act perfectly, prudently, or even reasonably. Rather, insurers must 'refrain from acting solely on the basis of their own interests in settlement.'" *Novoa*, 542 Fed. Appx. at 796 (*quoting State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 55, 58 (Fla. 1995)).  The Florida court rejected that view as too restrictive, holding that Florida precedent has "made clear that there is far more

---

[3] *Novoa v. GEICO Indem. Co.*, 542 Fed. Appx. 794 (11th Cir. 2013).

to the bad faith inquiry than whether the insurer acted in its own interest." *Harvey*, 259 So. 3d at 8.

Rather, the Florida Supreme Court articulated the objective totality of the circumstances standard:

> Indeed, in *Boston Old Colony*, we stated in no uncertain terms that an insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. We explained that this duty obligated an insurer to exercise such control over the handling of the claim and make such decisions in good faith and with due regard for the interests of the insured. Additionally, not only is an insurer required to refrain from acting in its own interests in handling the claim, but it must also act with care and diligence. Thus, the Eleventh Circuit's contention that an insurer need not act prudently or even reasonably also misconstrues our well-established bad faith precedent.

*Id*. (internal quotations omitted).[4]

### AS PART OF THAT LEGAL STANDARD, FLORIDA LAW DEEMS THE UNDERLYING VERDICT AN ESSENTIAL ELEMENT

The relevance of the underlying breach of contract verdict (or its equivalent) in assessing an insurer's bad faith under the totality of the circumstances standard in Florida cannot be overstated. Under Florida law, "if the injured third party or the insured is successful in establishing that the insurer breached the duty of good faith in handling the claim, the plaintiff is entitled to recover the full extent of the damages to which the insured was exposed, including an excess judgment." *Fridman v.*

---

[4] The *Harvey* decision largely addressed a third-party bad faith claim by an insured against its insurer. As will be explained, Florida largely employs the same standard for third-party and first-party claims. *See State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 60 (Fla. 1995).

*Safeco Ins. Co. of Illinois*, 185 So. 3d 1214, 1220 (Fla. 2016) (*citing Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 681–82 (Fla. 2004)).  Invariably, the existence of an excess judgment is relevant to the issue of determining the insured's damages in a bad faith claim. § 627.727(9), Fla. Stat. (2023) (stating that the damages an insured can recover in a bad faith action "shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state").

To understand why that judgment (excess or not) is also relevant to the jury's determination of liability under the totality of the circumstances standard, we must look at the essence of a bad faith suit:

> The essence of a "bad faith" insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits) — all of which results in the insured being exposed to an excess judgment.

*Fid. & Cas. Co. of New York v. Cope*, 462 So. 2d 459, 460 (Fla. 1985) (internal citations omitted).  Which is to say, the insurer's actions are assessed to determine whether they "act[ed] in bad faith in failing to complete the settlement within the time deadlines, thereby insulating its insured from an excess judgment." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 679 (Fla. 2004).  In third-party insurance claims, like those described above, the jury is always presented with evidence that the insured bears the risk of an excess judgment.

18

An underinsured motorist claim, like the one at issue here, is often analyzed through the same lens as those third-party insurance claims described above. *See State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 60 (Fla. 1995) (discussing the chronology of Florida's first and third party bad faith laws and concluding that the "Legislature created a first-party bad faith cause of action by an insured against the insured's uninsured or underinsured motorist carrier, thus extending the duty of an insurer to act in good faith to those types of actions."). The underlying breach of contract judgment and the fact of an excess judgment, both factor into the fact-finder's evaluation of the insurer's bad faith actions. § 627.727(9), Fla. Stat. (2023).

The underlying judgment matters not just to the calculation of the insured's damages but also to the existence of bad faith in the first place. Recently, Florida's Second District Court of Appeal held that "part of the prosecution of [a] Bad Faith Suit" includes "[l]itigation of the existence and amount of" the insured's damages, which, in that case, included "whether and how much of the fees incurred litigating the UM action were the natural, proximate, probable, or direct consequence of the insurer's bad faith actions." *Milling v. Travelers Home & Marine Ins. Co.*, 311 So. 3d 289, 293 (Fla. 2d DCA 2020). Drawing back to the general third-party bad faith principles above, the insurer's actions are assessed to determine whether it acted in good faith in preventing the insured from "being exposed to an excess judgment" — the fact of an excess judgment (or judgment at all) is a necessary

19

predicate to determine whether the insurer acted in good or bad faith.  *Fidelity and Cas. Co. of New York*, 462 So. 2d at 460.[5]

As in third-party bad faith actions, the risk of an excess judgment still exists in first-party claims and thus it is the insurer's duty to prevent it.  *Fridman*, 185 So. 3d at 1223 ("[T]he tender of the policy limits to the insured does not eliminate the UM action or the insurer's exposure to an excess verdict").  Indeed, in *Fridman (II)*, the Florida Supreme Court cited with approval the dissenting opinion in the antecedent Fifth District Court of Appeal *Fridman (I)* decision, which held that "a verdict in excess of the policy limits is **evidence *and*** a recoverable measure of damages in the subsequent bad faith action."  *Id*. at 1224 (citing *Fridman (I)*, 117 So. 3d at 27).  The Supreme Court held that an insured is entitled to determination of a possible excess verdict because "the jury's verdict [is] the true extent of the insured's injuries and provide[s] a basis to award damages in the inevitable bad faith action the insurer foresaw on the horizon."  *Fridman (II)*, 185 So. 3d at 1224 (citing *Fridman (I)*, 117 So. 3d at 29).

Ultimately, the fact of an underlying judgment is essential because Florida law rejects the notion that an insured should have to relitigate the issues raised and adjudicated in the underlying breach-of-contract case.  In *Fridman (II)*, the Florida Supreme Court explicitly held that "it is obvious that" the determination of liability and damages in an action to determine insurance benefits is "binding in [a subsequent] bad faith action."  *Id*. at 1224–1225.

---

[5] To be sure, the underlying verdict is also a legal predicate to the bringing of a bad faith claim in Florida.  *Fridman*, 185 So. 3d at 1223.

In reaching this conclusion, the Supreme Court reasoned that "[b]ecause a determination of the full extent of the insured's damages is one of the prerequisites to a bad faith cause of action," precluding the results of the underlying action in the bad faith case "would force the parties to relitigate the issue of damages a second time prior to the bad faith trial. This would be an obvious waste of judicial and litigant resources. It would also result in serious, unintended consequences, such as running the almost-certain risk of inconsistent verdicts; potentially raising comity issues between state and federal courts; … placing an inexplicable burden on plaintiffs to prove their cases twice; and causing a great deal of judicial inefficiency." *Id*. at 1224-25 (citations and internal quotation marks omitted).

In a recent decision out of the Fourth District Court of Appeal, the Florida appellate court followed the principles in *Fridman (II)* and held that an insurer is not permitted in a bad faith case to relitigate issues that it tried (or could have tried) in the underlying breach of policy case. *Cingari v. First Protective Ins. Co*., 4D2022-2376, 2024 WL 24798, at *4 (Fla. 4th DCA Jan. 3, 2024). The Fourth District cited the following passage from *Fridman (II)* as dispositive:

> If the amount of the [uninsured motorist] verdict is not binding as an element of damages in the bad faith litigation, it would allow the insurer—or the insured, if the verdict were less than anticipated—a second bite at the proverbial apple. As the Fourth District Court of Appeal stated in *GEICO General Insurance Co. v. Paton*, it would be "such bad policy" that there is not "even a hint of its existence in any case the Supreme Court has decided in this area." 150 So. 3d 804, 807 (Fla. 4th DCA 2014). Where the insurer "participated fully in the first trial with an opportunity to challenge the plaintiff's evidence and a powerful motive to suppress the amount of damages," Florida's "policy

is not to give multiple bites at the same apple absent some legal infirmity in the first trial." *Id*.

*Id*. at 1225. Which is to say, the notion in Florida that an insurer can be given the opportunity to retry the underlying case anew in a subsequent bad faith case is deemed "such bad policy" that there is not "even a hint of its existence in any case the Supreme Court has decided in this area." *Id*. (citing *GEICO Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 807 (Fla. 4th DCA 2014)). *See also Batchelor v. Geico Cas. Co.*, 6:11-CV-1071-ORL-37, 2014 WL 3906312, at *4 (M.D. Fla. June 9, 2014) (sustaining objections to interrogatories regarding damages because "[f]orcing plaintiffs to relitigate their damages in first-party bad faith actions would have serious ramifications, including: . . . creating a discrepancy (surely unintended and definitely illogical) between first- and third-party bad faith claims.")

**B. The District Court Applied the Wrong Legal Standard to Ms. Woods' Bad Faith Claim — Ignoring the Totality of the Circumstances Standard.**

In determining that the underlying breach-of-contract verdict was irrelevant to the jury's determination of bad faith, the district court applied the wrong legal standard to Ms. Woods' bad faith claim. The district court's ruling was based on the belief that Florida law applies a subjective standard to determining bad faith. That is, the district court believed the jury should only hear about Progressive's adjusters' subjective beliefs about their view of the facts, rather than an objective assessment of the totality of the circumstances. Florida law requires an assessment of the latter — to the exclusion of the former. By exclusively considering Progressive's state of mind when making its evidentiary rulings, the district court applied the

wrong legal standard and thus committed a per se abuse of its discretion. *See Henderson*, 409 F.3d at 1297.

Throughout trial, and particularly when explaining its decision to keep the underlying verdict out of evidence, the district court repeated its position that Progressive's employees' mental impressions during the handling of the underlying claim were emblematic of the standard:

> THE COURT: But that's for me, not for this jury. The only issue, as I understand it, for this jury is what was Progressive's state of mind, for lack of a better way to phrase it.
>
> . . .
>
> THE COURT: Well, I disagree with that. I think the question is this: To the extent it's a hearsay objection, what I hear Mr. Duke saying is it's not being offered for the truth. It's being offered because that's what the adjuster believed to be true. Now, it may not have been true, but he believed it to be true.
>
> . . .
>
> THE COURT: It's what the insurer, in good faith or not, believed the facts would be or would not be. They could be completely wrong and still act in good faith. That's the issue for the jury. It's not whether they were right in what – in how they evaluated the case. It's whether they evaluated the case in good faith. That's different.

DE:228 at 22:2-18, 160:21-162:3, 202:1-6.   The commonality in all the district court's explanations was an exclusive focus on the "state of mind" of Progressive's employees—not an objective evaluation of the totality of the circumstances.

The district court's rulings implemented a standard of care dependent (and nearly completely focused) on what Progressive's adjusters' subjective belief of the

facts would or would not be, rather than an objective view of whether Progressive "acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges*, 896 So. 2d at 680. Much like the federal decision disapproved of by the Florida Supreme Court in *Harvey*, 259 So. 3d at 7–8, the district court here based its evidentiary ruling on whether Progressive's employees' state of mind was self-interested as opposed to whether their actions could objectively be considered bad faith.[6]

Progressive and its employees may have wanted to settle Ms. Woods' claim, but the relevant inquiry is whether, in attempting to do so, it exercised the same degree of care and diligence as a reasonably prudent person in the management of its own business. *Boston Old Colony Ins. Co.*, 386 So. 2d at 783; *Harvey*, 259 So. 3d at 8. The point is that Progressive's adjusters could have subjectively believed that they acted in good faith and Progressive could still be liable for bad faith. That's how we know the standard was misapplied.

Effectively, by assessing Progressive's failure to settle Ms. Woods' claim based on Progressive's adjusters' subjective intent the district court transformed

---

[6] To be sure, the subjective standard applied by district court has vestiges of the "fairly debatable" standard applied by other states in bad faith litigation but ultimately rejected by the Florida Supreme Court. *See State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 55, 62 (Fla. 1995). Under the "fairly debatable" standard, a claim for bad faith can succeed only if the plaintiff can show the absence of a reasonable basis for denying the claim. *Id*. As part of that inquiry, "the insurer must have knowledge of the absence of a reasonable basis or act with reckless disregard of the absence of a reasonable basis." *Lund v. Am. Motorists Ins. Co.*, 797 F.2d 544, 548 (7th Cir. 1986). Which is to say, the subjective intent and knowledge of the insurer and its agents guides that analysis. But that standard was explicitly rejected by the Florida Supreme Court over thirty years ago. *See Laforet*, 658 So. 2d at 62.

Ms. Woods' burden from proving an objective standard under the totality of the circumstances to proving an intentional tort under a subset of the circumstances. The focus should have been, as Florida law makes clear, on the objective totality of the circumstances. That means that the relevant inquiry was not what Progressive and its employees subjectively wanted or intended to do, but what Progressive and its employees did: Whether Progressive failed to settle Ms. Woods' claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward Ms. Woods and with due regard for her interest. *See* § 624.155(1)(b)(1), Fla. Stat. (2023); Fla. Std. Jury Instr. 404.4.

That is the standard in Florida, but it was not applied here. By excluding the underlying breach-of-contract verdict, the district court strayed from the totality of the circumstances in favor of just some of the circumstances — some circumstances which, perhaps, might play a role in the larger assessment of Progressive's actions, but when considered without the context of the jury's verdict (or the knowledge that Ms. Woods has a viable claim to begin with), transformed the reasonable prudent person standard into a one-sided subjective one. The misapplication of the basic standard was prejudicial because it led to improper admissions and exclusions of evidence, most prominently the underlying breach-of-contract verdict. That, under this Court's law, is an abuse of discretion per se and should result in reversal of the final judgment in favor of a new trial with application of the correct standard. *See Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1301 (11th Cir. 2023), *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1251 (11th Cir. 2023), *Managed Care*

*Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1153 (11th Cir. 2019) (all sharing the view that "[a]n error of law is an abuse of discretion per se").

**C. The District Court's Exclusion of the Underlying Breach-of-Contract Verdict — A Necessary Predicate to the Jury's Determination of Bad Fath — Forced a Trial that was Antithetical to Florida's Bad Faith Laws.**

Aside from jettisoning the objective, totality of the circumstances standard, the district court's evidentiary ruling misapplied Florida law in determining that the underlying breach-of-contract verdict was not "relevant" to the jury's determination of bad faith and permitting Progressive to retry the underlying case in front of a new jury.  DE:228 at 202.  Under Florida law, the existence of a verdict — and the existence of an excess judgment — were necessary precursors for the jury to understand how it should evaluate Progressive's actions.  If part of Progressive's duty is to insulate Ms. Woods from an (excess) verdict, the jury must be told whether Progressive accomplished that goal.  Otherwise, the jury is left to wonder whether Ms. Woods had a viable claim to begin with, while Progressive undermines the evidence that led to her successful initial claim.  For another reason, the district court misapplied Florida law in excluding the underlying verdict, and the misapplication constitutes a second abuse of discretion per se.  *See Henderson*, 409 F.3d at 1297.

In a case "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations."  *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991).  The amount of liability, as ultimately determined in the underlying breach-of-contract claim, provides context for a bad faith jury to

26

determine how clear that liability should have been to an insurer from the beginning of the claims process. By way of example, an insurer's actions should be objectively viewed differently where an insured suffers damages in multiples over the insurance policy's limit — *i.e.*, it is objectively hard to believe an insurer's testimony regarding its evaluation of its insured's damages where that insured suffers damages millions of dollars over the policy's limit. For that reason, Florida courts have implied that the underlying breach-of-contract verdict is relevant to not just damages in a bad faith case, but to liability as well. *Milling*, 311 So. 3d at 293; *Fridman*, 185 So. 3d at 1223.

In this case, the existence of Ms. Woods' underlying breach-of-contract verdict was not only relevant, but critical to the jury's understanding that she presented Progressive with a legitimate claim. The jury should have, at minimum, been made aware that the underlying underinsured/uninsured claim was resolved in favor of Ms. Woods. *See Fridman*, 185 So. 3d at 1223 (holding that without that verdict insureds like Ms. Woods would not even have a cause of action for first-party bad faith). Without that knowledge, the jury was left to speculate as to whether Progressive was correct about its subjective evaluation of Ms. Woods' claim and could not evaluate Progressive's actions in the proper context.

The district court's incorrect application of Florida's bad faith standard resulted in contrary results. That is, instead of applying the correct legal standard and finding that Ms. Woods would be prejudiced without allowing the jury to know of the underlying breach-of-verdict, the district court somehow reversed it and determined that Progressive would be prejudiced with the introduction of the

27

evidence and instruction!  DE:228 at 10–12; DE:228 at 207:6–208:15; DE:229 at 200–202.  That cuts squarely against Florida law.

The Florida Supreme Court made clear that an insurer, like Progressive, will *not* be prejudiced from admission of the underlying verdict, so stating:

> [W]e make clear that the insurer has the full opportunity to defend its actions related to its handling of the insured's UM insurance claim when litigating the bad faith action. In other words, just because the amount of the UM verdict is a binding element of damages under section 627.727(10) in the bad faith case, the insurer is not precluded from explaining its actions in failing to pay the policy limits when demanded and presenting its case for why it did not act in bad faith in the handling of the UM claim.

*Fridman (II)*, 185 So. 3d at 1230.  The district court accordingly permitted Progressive to explain its actions and present its case "for why it did not act in bad faith in the handling of the UM claim."  *Id*.  And Progressive did so.  But the jury should have been equipped with the vital information that Progressive's actions ultimately resulted in a favorable verdict for Ms. Woods and an excess judgment.

Forbidding testimony that Ms. Woods' received an excess verdict gave Progressive another bite at the apple by questioning the causation and extent of Ms. Woods' damages.  As demonstrated during Progressive's opening statement and Progressive's questioning of witnesses throughout trial, Progressive improperly argued that Ms. Woods was requesting an excessive amount of coverage considering her "minor" accident.  DE:228 at 197:5-11, 19-21.  But Ms. Woods' damages were ultimately determined to be more than those demands, a fact the jury was not presented.  Likewise, Progressive was allowed to label Ms. Woods' doctors as

"plaintiffs' doctors" and focus on her attorneys rather than on Progressive's conduct, under the justification that it was about Progressive's "state of mind." DE:228 at 293:12-294:12; 295:16-17; 296:8-16.

Indeed, Progressive's tact at trial nearly recreated the elements of the underlying UM litigation, as described by the Florida Supreme Court in *Fridman*:

> The purpose of UM litigation is to determine the damages caused by a negligent tortfeasor. It is, in essence, a personal injury action filed against the insured's insurer, who steps into the shoes of the tortfeasor, and the litigation proceeds as if the suit was filed against the tortfeasor. **The relevant evidence relates to how the accident happened, who was at fault, how the injuries occurred, the extent of those injuries, how those injuries were treated and are to be treated in the future, the cost of the treatment, lost wages, and all of the other damage issues generally present in personal injury litigation**. Thus, absent coverage issues, **causation** and **damages** to the injured insured are the <u>**primary focus of the UM litigation**</u>.

*Fridman*, 185 So. 3d at 1223–24 (citing this articulation of UM litigation with approval; internal citations omitted) (emphasis added). Progressive made "causation" and "damages" the primary focus of both the underlying breach-of-contract case *and* the bad faith case. That should not have been countenanced without also telling the bad faith jury how that initial litigation concluded.

The district court effectively allowed Progressive to retry the underlying breach-of-contract case, contrary to Florida law. *Cingari*, 2024 WL 24798, at *4; *Paton*, 150 So. 3d at 807; *Batchelor*, 2014 WL 3906312, at *4. And the jury, given the one-sided presentation of evidence, effectively rendered an "inconsistent verdict" on the already-settled breach-of-contract claim. *Fridman (II)*, 185 So. 3d at 1224. This misapplication of Florida law constitutes another per se abuse of

29

discretion.  *See Williams*, 65 F.4th at 1251; *Managed Care Advisory Group, LLC*, 939 F.3d at 1153.

**D.  The District Court's Evidentiary Ruling and Jury Instruction Disregarded Stipulated Evidence and Prejudiced Ms. Woods (it was a Rug Pull).**

Besides being derived from the incorrect legal standard, the district court's evidentiary ruling (and related refusal to instruct the jury) had the effect of prejudicing Ms. Wood's presentation of her case to the jury.  The parties approached trial with several stipulations: that the underlying verdict would be a stipulated piece of evidence at trial and that the fact that the jury rendered verdict in favor of Ms. Woods would require "no proof" at trial.  The district court not only disregarded those stipulations, but then permitted Progressive to effectively retry the merits of the underlying breach-of-contract case.  By disregarding the parties' stipulations and then never telling the jury that Ms. Woods had successfully prosecuted her claim against Progressive, the jury was left to wonder whether Ms. Woods even had a viable claim in the first place.  Introducing these variables at trial constitutes an abuse of the district court's discretion.

Recall, prior to trial, the parties stipulated that the following facts would "require no proof" at trial — which is to say, the parties would be free to discuss these facts and the jury would be free to hear these facts:

1.  On October 15, 2021, the jury rendered a verdict in favor of Ms. Woods and against Progressive in the amount of $545,760.

30

2.  The jury determined that Ms. Woods suffered a permanent
    injury as a result of the accident.

3.  On November 19, 2021, Final Judgment was entered in favor
    of Ms. Woods in the amount of $412,208.17.

DE:192.  Considering these stipulations, the parties filed a joint exhibit list which
included the underlying breach of contract verdict.  DE:217, Ex. C.

At no point in the trial proceedings did Progressive ever suggest that these
stipulations were made in error.  Rather, the district court's ruling came without
provocation, when the subject of allowing Progressive's impressions at trial
(dictated to their claim notes) came up.  DE:228 at 16–17.  It was at the start of trial
that the district court, on its own accord, disregarded the parties' stipulations and
excluded the verdict from evidence.  *Id*.

This ruling has a cascading prejudicial effect on the trial.  The district court
initially indicated that it would simply instruct the jury that the "parties agree there
has been an excess judgment" without telling them the amount of that judgment.
DE:228 at 19, 24.  That was before the parties' opening statements.  But as trial
progressed, the district court's ruling became even more restrictive, eventually
morphing into a full censorship regarding the underlying breach-of-contract
judgment.  DE:229 at 12.

All the while, Progressive continued to discuss and revisit the evidence
presented to the jury in the underlying case.  DE:228 at 195–196; DE:229 at 158-
163; 230 at 106:9-16; 205-210.  That included providing the jury with broad strokes
of information regarding the medical data presented to — and rejected by — the

31

underlying jury.  DE:228 at 195–196.  This had the undoubtable effect of allowing the bad faith jury to determine whether it believed Ms. Woods suffered any damages in the first place.  Which is to say, it had the effect of retrying the underlying breach-of-contract claim.

"[P]arties are bound by their stipulations and a pretrial stipulation frames the issues for trial." *G.I.C. Corp., Inc. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997).  Which is to say, litigants "[a]re entitled to have [their] case tried upon the assumption that ... facts, stipulated into the record, were established." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 676–78 (2010) (internal citation omitted).  This entitlement is the bookend to a party's undertaking to be bound by the factual stipulations it submits. *Id*.  As the Supreme Court has summarized:

> Factual stipulations are binding and conclusive ..., and the facts stated are not subject to subsequent variation. So, the parties will not be permitted to deny the truth of the facts stated, ... or to maintain a contention contrary to the agreed statement, ... or to suggest, on appeal, that the facts were other than as stipulated or that any material fact was omitted. The burden is on the party seeking to recover to show his or her right from the facts actually stated.

*Id*. (citing 83 C.J.S., Stipulations § 93 (2000)).

Perhaps for these reasons, "[b]efore agreeing to a stipulation, a litigant has a duty to satisfy himself concerning the matters which his opponent proposes for stipulation." *Alper Auto., Inc. v. Day To Day Imports, Inc.*, 21-14236, 2022 WL 3418643, at *3 (11th Cir. Aug. 17, 2022) (internal citation omitted).  This extends to both stipulated evidence and stipulations of fact as well. *See Christian Legal Soc.*

*Chapter of the University of California, Hastings College of the Law*, 561 U.S. at 677–78 ("[F]actual stipulations are formal concessions ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.")

To be sure, while the parties are bound by stipulations, a district court "has discretion to consider issues not raised in a pretrial stipulation or to disregard issues of law stipulated by the parties" but that discretion must be exercised to prevent "manifest injustice." Fed. R. Civ. P. 16(e) (allowing a district court to modify a pretrial order "after a final pretrial conference only to prevent manifest injustice."); *G.I.C. Corp., Inc.*, 121 F.3d at 1450; *See also Noel Shows, Inc. v. United States*, 721 F.2d 327, 331 (11th Cir. 1983).

In this case, Ms. Woods headed into trial with the assumption that the facts and evidence stipulated by the parties would preserve—indeed, these stipulations frame "the issues for trial." *G.I.C. Corp., Inc.*, 121 F.3d at 1450. The district court, however, disregarded the parties' stipulation to admit the underlying breach-of-contract verdict without ruling that the stipulation would cause manifest injustice, as required by Federal Rule 16(e). (Nor did Progressive ever articulate injustice). Rather, as described above, the district court determined that the verdict would simply not be relevant to the jury's determination of bad faith. But irrelevance is not manifest injustice.

The district court's disregard of the parties' stipulations pulled the rug from under Ms. Woods' theory of the case while bolstering Progressive's theory. Progressive was permitted to relitigate the underlying breach-of-contract trial — in

effect, disparaging and impugning the credibility of the evidence presented in that trial — while Ms. Woods could not disclose the outcome of that trial. Had the underlying verdict had any objections, Ms. Woods would have prepared accordingly, for example, by introducing evidence regarding the causation and extent of her damages produced in the underlying trial. Ms. Woods would have known in advance that she would have to prove once again to a jury that her damages were caused by the accident and valued in excess of the policy limits.

Instead, Ms. Woods relied on the stipulated evidence and facts, which would have shown the jury evidence of causation, damages, and the value of Ms. Woods' injuries. The trial court's disregard of the pretrial stipulations did not prevent manifest injustice but rather produced it. *See United States v. Varner*, 13 F.3d 1503, 1507–08 (11th Cir. 1994) ("[u]pon a finding that an amendment to the pretrial order would result in either substantial injury to the opposing party or inconvenience to the court, the pretrial order should only be amended to avoid manifest injustice.")

The district court's ruling cut against Florida law which rejects the notion that an insured should have to relitigate the issues raised and adjudicated in the underlying breach-of-contract case. Ms. Woods was effectively "force[d] … to relitigate the issue of damages a second time [at] the bad faith trial." *Fridman*, 185 So. 3d 1224. This resulted in her facing the "inexplicable burden" to prove her "cases twice" without even having the advantage of telling the jury that she won the first time around. *Id*. at 1224–1225. Florida's "policy is not to give multiple bites at the same apple absent some legal infirmity in the first trial," so much so that there

34

is not "even a hint" by the Florida Supreme Court that such a procedure is appropriate. *Cingari*, 4D2022-2376, 2024 WL 24798 at *4 (citations omitted).

"[S]tipulations entered into freely and fairly shall not be set aside except to avoid manifest injustice." *Henry v. C.I.R.*, 362 F.2d 640 (5th Cir. 1966). Neither the district court, nor Progressive, have ever articulated why the parties' pretrial stipulations would produce manifest injustice. The evidence points to the contrary: by unilaterally amending the parties' pretrial stipulations to keep the underlying verdict out of evidence (as well as the stipulated to fact of its existence), the district court forced Ms. Woods to prove her case with one hand tied, by surprise, behind her back. The district court's revocation of the parties' stipulations manifested injustice, and thus the district court abused its discretion.

## CONCLUSION

The Court should reverse the district court's final judgment following the jury's verdict and remand for a new trial, governed by a correct application of law regarding the presentation of evidence.

Respectfully submitted,

<table>
<tr>
<td>
Stephen A. Marino, Jr.<br>
  Florida Bar No. 79170<br>
Michal Meiler<br>
  Florida Bar No. 86522<br>
VER PLOEG & MARINO, P.A.<br>
100 S.E. Second St., Ste. 3300<br>
Miami, Florida 33131<br>
Telephone: (305) 577-3996<br>
Facsimile: (305) 577-3558<br>
smarino@vpm-legal.com<br>
mmeiler@vpm-legal.com
</td>
<td>
Elliot B. Kula<br>
  Florida Bar No. 003794<br>
William D. Mueller<br>
  Florida Bar No. 120124<br>
KULA & ASSOCIATES, P.A.<br>
11900 Biscayne Blvd., Ste. 310<br>
Miami, Florida 33181<br>
Telephone: (305) 354-3858<br>
Facsimile: (305) 354-3822<br>
eservice@kulalegal.com<br>
elliot@kulalegal.com
</td>
</tr>
</table>

By: ____/s/ Stephen A. Marino, Jr.___      By: _____/s/ Elliot B. Kula_____
        Stephen A. Marino, Jr.               Elliot B. Kula

By: _____/s/ Michal Meiler_____      By: _____/s/ William D. Mueller____
         Michal Meiler               William D. Mueller

*Co-Counsel for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses Times New Roman 14-point typeface and contains 9,276 words.

/s/ Elliot B. Kula
Elliot B. Kula

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system. I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Elliot B. Kula
Elliot B. Kula
