*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 23-13407
LT No. 9:19-cv-80517-BER

---

LAUREN WOODS,

*Plaintiff – Appellant*,

v.

PROGRESSIVE AMERICAN INSURANCE COMPANY

*Defendant – Appellee.*

---

**BRIEF OF DEFENDANT–APPELLEE**

---

ADAM A. DUKE
Florida Bar No.: 0055734
aduke@flalawyer.net
DEREK L. VELIZ
Florida Bar No.: 113431
dveliz@flalawyer.net
SEAN M. FARD
Florida Bar No.: 1017980
sfard@flalawyer.net
Young, Bill, Boles, Palmer,
Duke & Thompson, P.A.
One Biscayne Tower
2 South Biscayne Boulevard
Suite 3195
*Counsels for Defendant – Appellee*

## <u>PROGRESSIVE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 11th Cir. R. 26.1-1 through 26.1-3, Appellee, PROGRESSIVE AMERICAN INSURANCE COMPANY ("PROGRESSIVE"), hereby states that the Certificate of Interested Persons and Corporate Disclosure Statement included in Appellant's Brief ("Brief") is correct and complete.

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Rule 34(a)(1) of the Federal Rules of Appellate Procedure, Appellee, PROGRESSIVE, respectfully submits that oral argument shall be beneficial is not necessary for this matter. The facts pertinent to the present issue and the applicable legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

# <u>TABLE OF CONTENTS</u>

Progressive's Certificate of Interested Persons
and Corporate Disclosure Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .C1

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    <u>The District Court Did Not Commit an Abuse of Discretion in Excluding Reference to the Underlying Breach of Contract Verdict and Final Judgment and Its Evidentiary Rulings were Consistent with Prevailing Florida Law</u>……………………………………………..4

        A. The District Court Properly Excluded the UM Verdict as it was Irrelevant to Progressive's claims handling Conduct Under the Totality of the Circumstances………………………….......5

        B. Proper Application of the Totality of the Circumstances………..12

    II.    <u>The District Court Did Not Apply the Wrong Legal Standard to Ms. Woods' Bad Faith Claim—Properly Focusing on the Totality of the Circumstances</u>…………………………………………….17

        A. The District Court's Consistent Application of the Totality of the Circumstances Standard……………………………………….18

        B. The District Court Did Not Apply a Subjective Standard that Ignored the Totality of the Circumstances………………………23

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

III.    The District Court's Exclusion of the UM Verdict Did not Result in a Re-litigation of Damages, But Ensured a Fair Trial…………………25

IV.    The District Court's Evidentiary Ruling and Jury Instruction Did Not Disregard the Parties Stipulated Evidence, But Instead, Ensured a Fair Trial and Prevented Manifest Injustice……………………...…….31

V.    Alternatively, the Doctrine of Invited Error Precludes Ms. Woods From Claiming the District Court's Exclusion of the UM Verdict as Grounds for Reversal……………………………………………..39

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Certification of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .42

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..… 43

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

## <u>TABLE OF CITATIONS</u>

*Aetna Cas. & Sur. Co. v. Gosdin*,
803 F.2d 1153 (11th Cir. 1986)…………………………………...…………..2

*Berges v. Infinity Ins. Co*.,
896 So. 2d 665 (Fla. 2004)………………………………………….…… 17

*Boston Old Colony v. Gutierrez*,
386 So.2d 783 (Fla. 1980)…………………………………….………..23, 24, 36

*Conroy v. Abraham Chevrolet-Tampa, Inc*.,
375 F.3d 1228 (11th Cir. 2004)……………………………………………...….1

*Deary v. Progressive Am. Ins. Co.*, 536 F. Supp. 3d 1258 (S.D. Fla. 2021)*,*
*reconsideration denied,* 2021 WL 11960979 (S.D. Fla. Aug. 24, 2021),
*aff'd,* 2022 WL 2916358 (11th Cir. July 25, 2022)………………………………26

*Feijoo v. GEICO Gen. Ins. Co.,*
678 F. App'x 862 (11th Cir. 2017)…………………………….………...….20, 37

*Fid. & Cas. Co. of N.Y. v. Cope*,
462 So. 2d 459 (Fla. 1985)……………………………...…………………*passim*

*Fortune v. First Protective Ins. Co*.,
302 So. 3d 485 (Fla. 2d DCA 2020)…………………………...…………..19

*Fridman v. Safeco Ins. Co. of Ill.*,
185 So. 3d 1214  (Fla. 2016)……………………………….…..…….*passim*

*Furcron v. Mail Centers Plus, LLC*,
843 F.3d 1295 (11th Cir. 2016)……………………………………...……..2

*Garcia v. GEICO Gen. Ins. Co*.,
2013 WL 12085079 (S.D. Fla. June 14, 2013)………………………..29, 39, 40, 41

*GEICO Cas. Co. v. Barber*,
147 So. 3d 109 (Fla. 5th DCA 2014)……………………………………..….13

*G.I.C. Corp., Inc. v. United States*,

iv

121 F.3d 1447 (11th Cir. 1997)…………………………………...…………………35

*Harvey v. GEICO Gen. Ins. Co.*,
259 So.3d 1 (Fla. 2018)……………………………………………………*passim*

*Holtzapple v. Nationwide Mut. Fire Ins. Co*.,
2020 WL 12175833 (M.D. Fla. May 6, 2020)………………………………..…..17

*Johnson v. Geico Gen. Ins. Co.,*
318 Fed. Appx. 847(11th Cir.2009)……………………………………………17

*Losat v. Geico Cas. Co*.,
2011 WL 5834689 (M.D. Fla. Nov. 21, 2011)…………………………………18

*Milling v. Travelers Home & Marine Ins. Co.*,
311 So. 3d 289 (Fla. 2d DCA 2020)……………………………………… 5, 12, 16

*Pelaez v. Government Employees Ins. Co*.,
13 F.4th 1243, 1254 (11th Cir. 2021)…………………………………………..22

*Perry v. State Farm Fire & Cas. Co*.,
734 F.2d 1441 (11th Cir. 1984)…………………………………….…………1

*Piamba Cortes v. Am. Airlines, Inc*.,
177 F.3d 1272 (11th Cir. 1999)…………………………………...…………..1

*Powell v. Prudential Prop. & Cas. Ins. Co.,*
584 So. 2d 12 (Fla. 3d DCA 1991)……………………………………...……29

*State Farm Mut. Auto. Ins. Co. v. Laforet*,
658 So.2d 55 (Fla.1995)…………………………………………………..……16

*TIG Ins. Co. v. United Nat'l Ins. Co*.,
 2007 WL 9698302 (S.D. Fla. Jan. 12, 2007)………………………...…….17

*United States v. Stone*,
139 F.3d 822, 838 (11th Cir. 1998)………………………………………..40

*Wopshall v. Travelers Home & Marine Ins. Co*.,
2022 WL 611551 (S.D. Fla. Mar. 1, 2022)……………………………..……21

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

*Vest v. Travelers Ins. Co.,*
753 So. 2d 1270 (Fla. 2000)……………………...…………………….*passim*

*316, Inc. v. Maryland Cas. Co.,*
625 F.Supp.2d 1187 (N.D. Fla. 2008)…………..……………………………………19

**Statutes**

Florida Statute § 624.155…………………………………..…………..12, 17, 38

Florida Statute § 627.727……………………………...…………………5, 6

**Rules**

Federal Evidence Code 403………………...………………………8, 15, 34, 38

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

## STATEMENT OF THE ISSUES

1. Whether the district court correctly applied the legal standard for a Florida bad faith claim by focusing on Progressive's conduct and decision-making process under the totality of the circumstances, rather than solely on the outcome of the antecedent breach-of-contract case.

2. Whether the district court correctly interpreted and applied Florida's bad faith law by determining that the underlying verdict, while a factor, is not determinative of bad faith liability.

3. Whether the district court's handling of the parties' pretrial stipulations was proper and consistent with the principle that pretrial agreements must not compromise the fairness and integrity of the trial proceedings, particularly when assessing whether their enforcement would result in manifest injustice.

## STANDARD OF REVIEW

The Court reviews a district court's evidentiary rulings for abuse of discretion. *Conroy v. Abraham Chevrolet-Tampa, Inc*., 375 F.3d 1228, 1232 (11th Cir. 2004) (citing *Piamba Cortes v. Am. Airlines, Inc*., 177 F.3d 1272, 1305 (11th Cir. 1999)). An "evidentiary ruling will be overturned only if the moving party establishes that the ruling resulted in a 'substantial prejudicial effect.'" *Piamba Cortes*, 177 F. 3d at 1306 (citation omitted). In applying this standard, an appellate court "must affirm unless [it] at least determine[d] that the district court has made a 'clear error of judgment,' or has applied an incorrect legal standard." *Id.* (citation omitted).

However, even a clearly erroneous evidentiary ruling will be affirmed if harmless. *See Perry v. State Farm Fire & Cas. Co*., 734 F.2d 1441, 1446 (11th Cir. 1984). An error is harmless unless it affects the substantial rights of the parties.

1

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

"Substantial rights are affected if one cannot say, with fair assurance ... that the judgment was not substantially swayed by the error." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016)(citing *Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1159-60 (11th Cir. 1986)).

## SUMMARY OF THE ARGUMENT

The district court's exclusion of the Underlying Verdict and Final Judgment (the "UM Verdict") was a proper exercise of discretion, consistent with Florida law and the "totality of the circumstances" standard for evaluating bad faith claims. The court's rulings focused the jury on Progressive's conduct during the claims process, preventing re-litigation of damages and ensuring a fair trial.

Ms. Woods mischaracterizes the district court's rulings and misconstrues Florida law. The UM Verdict was irrelevant to the bad faith determination because damages were stipulated to be decided by the court, not the jury, which was solely responsible for determining liability. Florida law, including *Fridman v. Safeco Ins. Co.*, 185 So. 3d 1214 (Fla. 2016), clarifies that the measure of damages in a bad faith action includes those established in the prior action, not that the prior verdict itself is necessary for determining bad faith liability. The focus was on whether Progressive acted in good faith based on the information available during the claims process, preventing undue prejudice and confusion.

2

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
CASE NO. 23-13407

Ms. Woods' claim that the exclusion allowed Progressive to present subjective opinions while preventing her from rebutting with the prior jury's findings is incorrect. The district court correctly allowed Progressive to explain its actions regarding Ms. Woods' UM claim, consistent with the totality of the circumstances standard, which evaluates the insurer's actions based on the information available during the claims process, not through hindsight evidence that would be applied retroactively to demonstrate bad faith conduct, such as an excess verdict.

Ms. Woods' contention that the district court disregarded stipulated facts and prejudiced her case is also incorrect. The district court did not disregard the parties' stipulation regarding the UM Verdict, but rather ensured a fair trial by excluding it as irrelevant to the central issue of whether Progressive acted in good faith. The parties were always bound by the stipulations of fact, however, the UM Verdict was irrelevant to the issue of liability. Moreover, Ms. Woods' counsel's argument that the bad faith inquiry stopped at the start of the underlying UM trial created confusion regarding the relevance of the UM Verdict. The question of whether evidence should be admitted is a matter of law for the trial court to determine, and that determination is not restricted by the stipulation of the parties under the Federal Rules. The court excluded the UM Verdict to prevent substantial undue prejudice to Progressive, as

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

its probative value was outweighed by the potential for jury confusion and unfair bias.

The doctrine of invited error precludes Ms. Woods from claiming the district court's exclusion of the UM Verdict as grounds for reversal. By stipulating that the court would determine the issue of damages and arguing that the bad faith inquiry should stop at the start of the underlying UM trial, Ms. Woods' counsel invited the court's decision to exclude the UM Verdict. Consequently, any error in this exclusion was the product of Ms. Woods' own arguments and stipulations. Ms. Woods cannot now claim error on appeal for an issue she invited through her trial strategy. Thus, the district court's decision to exclude the UM Verdict was neither an abuse of discretion nor a misapplication of the law, and Ms. Woods' arguments to the contrary are unfounded. As such, Ms. Woods' request for a reversal and remand for a new trial is unwarranted.

## **ARGUMENT**

**I.**     **The District Court Did Not Commit An Abuse Of Discretion In Excluding The Underlying Breach Of Contract Verdict And Final Judgment And Its Evidentiary Rulings Were All Consistent With Prevailing Florida Law.**

The district court properly exercised its discretion in excluding reference to the UM Verdict in the subsequent bad faith trial. Its' ruling aligns with Florida law, which evaluates an insurer's bad faith under the totality of the circumstances

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

standard. The UM Verdict was irrelevant to this standard since the issue of damages was never for the bad faith jury to determine. Indeed, the parties stipulated that the district court would resolve the issue of damages, while the jury would only assess Progressive's potential liability for bad faith. Consequently, the UM Verdict, which solely related to damages, had no bearing on the bad faith inquiry.

Ms. Woods argues that the underlying verdict was essential under the totality of the circumstances standard for assessing bad faith, relying heavily on *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016), and related cases. However, she misconstrues these cases and the evidence presented at trial. As explained further herein, the district court's evidentiary rulings were consistent with prevailing Florida law, and Ms. Woods was not prejudiced by a "subjective legal standard" through the district court's exclusion of the UM Verdict. The district court's approach prevented the re-litigation of damages already established in the underlying UM action, and instead, properly focused the proceedings on Progressive's conduct during its claims process, consistent with Florida law.

### A. The District Court Properly Excluded The UM Verdict As It Was Irrelevant To Progressive's Claims Handling Conduct Under The Totality of The Circumstances.

Ms. Woods argues that the existence of an excess judgment was relevant to determining the insured's damages in a bad faith claim, citing Florida Statute § 627.727(9). She contends that the statute, along with cases such as *Milling v.*

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

*Travelers Home & Marine Ins. Co.*, 311 So. 3d 289 (Fla. 2d DCA 2020), *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016), and *Fid. & Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459 (Fla. 1985), demonstrate that an underlying breach of contract judgment and the fact of an excess judgment are necessary for the jury's evaluation of an insurer's bad faith liability under the totality of the circumstances standard.

Ms. Woods reliance on § 627.727(9) is misplaced. [DE 29, at p. 19]. The statute only identifies the damages recoverable in a subsequent first-party bad faith action involving a UM claim, not the determination of bad faith liability. The statute outlines the damages that can be recovered, including the total amount of the claimant's damages, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of law. *See* § 627.727(9). It does not imply that an excess judgment is necessary for the jury to evaluate an insurer's bad faith liability.

Importantly, in this action, damages were never at issue, as the parties stipulated that the district court, not the jury, would determine damages if the jury found Progressive liable for bad faith. [D.E. 204]. This stipulation rendered the UM Verdict irrelevant to the jury's task of determining bad faith liability. Ms. Woods omits this crucial stipulation, which was clearly addressed at trial. Moreover, her contention that the excess judgment was relevant to the existence of Ms. Woods'

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

claim for bad faith is misleading, as Progressive's counsel never disputed that she met this element for her lawsuit. [*See* ECF No. 228, at p. 18: 8-10 ("The fact that it's an element of their claim or a condition precedent isn't an issue if it's not disputed. There is no dispute between the parties that there was an excess.")].

Per the parties' stipulation, the district court correctly identified that the only issue for the jury to determine was whether Progressive acted in bad faith in handling Ms. Woods' claim, not the amount of damages Ms. Woods established in the underlying UM action. The court's decision to exclude the UM Verdict was based on the context and scope of the issues framed by Ms. Woods' counsel, as highlighted below:

> THE COURT: . . . **I think based on [Ms. Woods' counsel's] stipulation that you are not going to seek to argue that there was a continuing bad faith after the beginning of the trial, how the jury got to its verdict, to me, is irrelevant.**
>
> All that's relevant is what -- not even what the verdict was. **It was that it was a verdict in excess of the policy limit, because that is an element. And like I said, the amount of the verdict is relevant to the damages, if we get there. But that's for me, not for this jury.**
>
> The only issue, as I understand it, for this jury is what was Progressive's state of mind, for lack of a better way to phrase it.[1] Did they act in good faith or bad faith? What flows from that are issues the court will resolve later. If I think forward -- I think this was -- the proposed jury verdict form you sent me had one question: Did

---

[1] The underlined language was cited in Ms. Woods' Brief.

> Progressive act in good faith or bad faith? That's it. So
> that's where we are going.
>
> MR. MARINO: That is true.
>
> THE COURT: . . . We are not going to retry the underlying case,
> because I just don't think – **you've stipulated now that
> anything that happened after the beginning of the trial
> was irrelevant. Doesn't affect -- could not have affected
> and does not affect the state of mind that's at issue
> here.**

[*See* ECF No. 228, Jury Trial Tr. Vol. 1, at pp. 21:18-23:1 (emphasis added)].

Ms. Woods' counsel consistently argued that the UM Verdict was relevant, but the facts considered by the underlying UM jury were irrelevant to the totality of the circumstances because it would result in a re-litigation of damages. The inference that Ms. Woods wanted the jury to explore was that a prior jury found that Progressive was ultimately wrong in its evaluation and adjustment of her UM claim. [**DE 228:158:3-7**]. As such, the court's struggle was evident: if it allowed the excess judgment to be admitted, it would have to navigate the complex issue of what use can be made of that information without relitigating the underlying case. [*See*, *id*., at pp. 147:25-150:3]. In turn, the correct decision was the one the Court made—the excess judgment was irrelevant under the context of this case, and even if the evidence was somehow probative, it risked running afoul of Rule 403 of the Federal Rules of Evidence, particularly where the Ms. Woods consistently conceded that the bad faith inquiry stopped at the start of the underlying UM action.

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

Ms. Woods contends the lower court abused its discretion because "the jury should have been equipped with the vital information that Progressive's actions resulted in a favorable verdict for Ms. Woods and an excess verdict." [DE 29, at p. 28]. Essentially, she argues that the jury should have had the benefit of ***hindsight bias***—that is, without UM Verdict, "the jury was left to speculate as to whether Progressive was correct" in its evaluation of Ms. Woods' UM claim. [D.E. 29, at p. 27]. She not only misconstrues the vantage point from which a bad faith claim must be evaluated, but disingenuously argues that excluding the UM Verdict permitted Progressive to relitigate the damage previously established in the underlying UM action, relying heavily on *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016) and *Fid. & Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459 (Fla. 1985).

However, neither of the cases she cites supports her proposition that an underlying verdict is relevant to the fact finder's evaluation of liability in a subsequent bad faith case. For instance, Ms. Woods misconstrues the rationale of the Florida Supreme Court's precedent in *Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214 (Fla. 2016) to argue that the UM Verdict was essential for the jury to consider because "Florida law rejects the notion that an insured should have to relitigate the issues raised and adjudicated in the underlying breach-of-contract action case." [ECF No. 29, at p. 20]. Yet, *Fridman* only affirmed that "a determination of the full

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

extent of the insured's damages is one of the prerequisites to [both first-party and third-party] bad faith action." *Fridman,* 185 So. 3d at 1224-25.

*Fridman* does not mandate that an underlying verdict is necessary for determining bad faith liability. The *Fridman* Court only clarified that the measure of damages in a first-party bad faith action is the same as those in a third-party context—*i.e.*, the damages established in a prior tort or breach of contract action are recoverable and binding in the subsequent bad faith action. *Id.*, 185 So. 3d at 1221 ("in both first- and third-party bad faith actions, an element of damages includes any amount in excess of the policy limits."). Moreover, the opinion confirmed that "just because the *amount* of the UM verdict is a binding element of damages under section 627.727(10) in the bad faith case, the insurer is not precluded from explaining its actions in failing to pay the policy limits when demanded and presenting its case for why it did not act in bad faith in the handling of the UM claim." *Id.*, at 1230 (emphasis added). That is precisely what Progressive explained at trial.

Ms. Woods' argument conflates the existence of damages as a prerequisite for filing a bad faith claim with the relevance of those damages to the bad faith trial itself. The *Fridman* opinion does not mandate that the underlying excess judgment is automatically uncontroverted evidence that is necessary for determining whether the insurer acted in bad faith, as Ms. Woods inaccurately contends. Casually omitted from Ms. Woods' discussion of *Fridman* is the Florida Supreme Court's finding that

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

if "the amount of the UM verdict [wa]s not binding as **an element of damages in the bad faith litigation, it would allow the insurer—or the insured, if the verdict were less than anticipated—a second bite at the proverbial apple**." *Id.*, at 1225. For that reason, the *Fridman* Court confirmed that "the amount of damages in the UM case does not become moot by virtue of an insurer's 'confession of judgment' and tendering of the policy limits." *Id.*, at 1224. It held that "the determination of damages obtained in the UM action becomes a binding element of damages in the subsequent bad faith litigation against the same insurer . . . ." *Id.*, at 1228. However, the *Fridman* opinion clarified that the insurer is permitted to explain its actions, and that such explanations as to the reasonableness of its claims handling conduct does not amount to a re-litigation of causation and damages determined in a prior UM action. *Id.*

Similarly, Ms. Woods conflates the holding in *Fid. & Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459 (Fla. 1985) to argue that the UM Verdict in this case was "relevant to the jury's determination of liability under the totality of the circumstances standard. . . ." [DE, at p. 18]. However, in *Cope*, the issue was whether an injured party who secured a judgment in excess of a tortfeasor's insurance coverage could maintain a bad faith claim against the insurer when the injured party had executed a release of his claims against the tortfeasor who had already satisfied the judgment. The Florida Supreme Court held that if an excess judgment had been satisfied, absent

11

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

an assignment of that cause of action prior to satisfaction, a third party could not maintain an action for bad faith between the insurer and its insured. *See Cope*, 462 So. 2d at 460. *Cope* only established that an excess judgment is a necessary predicate for a bad faith lawsuit but did not suggest that it is necessary for a trier of fact to determine whether the insurer acted in good or bad faith.

Ms. Woods' reliance on *Milling v. Travelers Home & Marine Ins. Co.*, 311 So. 3d 289 (Fla. 2d DCA 2020), is also misplaced. *Milling* addressed the scope of recoverable damages in a subsequent bad faith lawsuit after the insurer was found liable, including the litigation of the existence and amount of the insured's damages. After analyzing the interplay between Florida Statutes §§ 624.155 and 627.727, the Second District Court of Appeals of Florida held that the damages recoverable in a subsequent bad faith action includes attorneys' fees incurred in the underlying UM action. *Id.* Neither *Fridman, Cope,* nor *Milling* contradict the district court's evidentiary ruling in the present case.

### B. Proper Application of the Totality of the Circumstances Standard.

The district court's decision to exclude the UM Verdict was consistent with the totality of the circumstances standard under Florida law. This standard evaluates an insurer's conduct based on the information available at the time of the claim, not in hindsight. The court emphasized that the issue for the jury was whether Progressive acted in good faith during the claims process, not on the ultimate

outcome of the UM action. Moreover, the district court's decision to exclude the UM Verdict was primarily based on the parties' stipulation that the court would determine damages, and the jury's role was limited to assessing Progressive's liability for bad faith.[2] Its' ruling was ultimately framed by Ms. Woods' argument, who consistently argued that the UM Verdict was relevant but the facts considered by the UM jury in computing those damages were irrelevant and should not be disclosed to the subsequent bad faith jury. In this regard, the court's decision to exclude the UM Verdict considered the potential for undue prejudice:

> THE COURT: Well let me ask you. . . .  You are going to argue to the jury, obviously, that the insurance company didn't act in good faith in resolving Ms. Woods's claim. When does that stop? Are you going to argue that up to and including to the end of the trial and until today they have continued to act in bad faith? Because if that's the case, I think [the facts Progressive learned in the underlying trial] probably relevant that they heard what they heard and have acted on it.
>
> If what you are saying to me is, no, we are just going to argue to the jury that prior to the first trial and terminating on the day that we selected a jury in the first trial, that's when their bad faith ended and we are not asking the jury to find bad faith after that date, then I might be in a different relevance position.

---

[2] The parties stipulation to permit the district court to determine the issue of damages is in accord with Florida Standard Jury Instruction 404.4. "The Note on Use for this instruction recognizes that in a bad-faith action . . ." "in which the court will determine damages, . . . omit the bracketed phase [*sic*] on causation." *GEICO Cas. Co. v. Barber*, 147 So. 3d 109, 116 (Fla. 5th DCA 2014) (Sawaya, J., dissent)("The issues in the bad-faith action should not include the issue of damages suffered as a result of the tortfeasor's negligence because the evidence is different.").

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

> So can you clarify that for me?

> MR. MARINO: That is the case. Your Honor is correct. So I think the furthest -- the closest to trial we get in terms of any testimony or evidence is -- and your Honor has rightfully excluded discussions at mediation.

[ECF No. 228, at pp. 12-13].

The issue presented to the district court was that introducing the underlying verdict would have improperly shifted the jury's focus from evaluating Progressive's actions during the claims process to the outcome of the underlying case, contrary to prevailing Florida law and the principles of fair trial and judicial efficiency. As Progressive's counsel identified, the UM Verdict was "clearly [] going to be used to suggest that Progressive undervalued the claim because a jury ultimately determined the claim was worth more than what Progressive offered." [DE 228, at pp. 14-15]. The consideration of substantial prejudicial effect from this type of argument was a consideration supported by the district court's reasoning. As the court stated to Ms. Woods' counsel:

> THE COURT: I think based on your stipulation that you are not going to seek to argue that there was a continuing bad faith after the beginning of the trial, how the jury got to its verdict, to me, is irrelevant.

> All that's relevant is what -- not even what the verdict was. It was that it was a verdict in excess of the policy limit, because that is an element. And like I said, the amount of the verdict is relevant to the damages, if we get there. But that's for me, not for this jury.

14

> The only issue, as I understand it, for this jury is what was Progressive's state of mind, for lack of a better way to phrase it. Did they act in good faith or bad faith? What flows from that are issues the court will resolve later.
>
> MR. MARINO: That is true.
>
> THE COURT: . . . **We are not going to retry the underlying case**, because I just don't think – **you've stipulated now that anything that happened after the beginning of the trial was irrelevant.** Doesn't affect -- could not have affected and does not affect the state of mind that's at issue here.

[*See* ECF No. 228, Jury Trial Tr. Vol. 1, at pp. 21:18-23:1 (emphasis added)].

Ultimately, the district court rightfully excluded the UM Verdict because it grappled with "whether it's appropriate to allow the jury to conclude that because there was an excess verdict, that somehow is relevant and probative of whether bad faith existed." [DE 228:158:3-7 ("if that is relevant to bad faith, then I have to grapple with the [Fed. R. Evid.] 403 question. . . .")]. By excluding the UM Verdict, the district court rightly permitted the jury to evaluate Progressive's actions based on what it knew at the time information was coming in—prior to the determination of damages in the Underlying UM Suit.

The district court's evidentiary ruling is consistent with the Florida Supreme Court's precedent in *Fridman*, as Ms. Woods highlighted in her Brief. [DE 29, at p. 28 ("the district court accordingly permitted Progressive to explain its actions and present its case for 'why it did not act in bad faith in the handling of the UM claim.'

WOODS v. PROGRESSIVE AMERICAN INS. CO.
CASE NO. 23-13407

*Id.* And Progressive did so.")]. The only issue she takes is that the jury should have been equipped to know Progressive was wrong in its claims handling evaluation because the underlying UM action "ultimately resulted in a favorable verdict for Ms. Woods and an excess judgment." [*See, id*.]. She complains that "the jury was left to speculate as to whether Progressive's actions were correct." [*Id.*, at 27].

However, the totality of the circumstances standard considers an insurer's conduct in real time as it adjusts the claim upon incoming information it receives, and whether that conduct is objectively reasonable. It is not viewed through the lens of hindsight by reference of an excess verdict. Both the trial court's evidentiary rulings and Florida precedent aligns with this principle. Any suggestion by Ms. Woods that this exclusion permitted Progressive to relitigate damages established in the underlying UM action is both a misinterpretation of the facts of this case and a misapplication of Florida law.

Neither the opinions of *Fridman, Cope,* nor *Milling* suggest that "Florida courts have ***implied*** that the underlying breach-of-contract verdict is relevant to not just damages in a bad faith case, but to liability as well." [DE 29, at p. 27]. Rather, all three opinions confirm that a determination of liability and damages in a prior UM action is a necessary element that must be satisfied prior to pursuing a bad faith lawsuit because it is a prerequisite. *See, e.g., Fridman*, 185 So. 3d at 1223 (discussing that "*Laforet* recognizes that the determination of the full extent of damages is

16

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

properly made in the UM case and not litigated in the bad faith action."). In this case, no one ever disputed that Ms. Woods satisfied this element to her cause of action, making the UM verdict irrelevant under the totality of the circumstances.

## II.    The District Court Did Not Apply The Wrong Legal Standard To Ms. Woods' Bad Faith Claim—Properly Focusing On The Totality of The Circumstances.

Ms. Woods' argument that the district court applied the wrong legal standard by focusing on the subjective beliefs of Progressive's adjusters rather than an objective assessment of the totality of the circumstances is a mischaracterization of the court's rulings and represents a misrepresentation of Florida's bad faith standard. [DE 29, at pp. 22-26]. Florida law mandates that an insurer's bad faith liability assesses whether the insurer acted fairly and honestly toward its insured and with due regard for their interests. *See* § 624.155(1)(b)(1), Fla. Stat. (2023); Fla. Std. Jury Instr. 404.4. Accordingly, "[t]he totality of the circumstances is evaluated by '**the information [the insurer] had available at the time [of its handling of the claim].**'" *See, e.g., Holtzapple v. Nationwide Mut. Fire Ins. Co.*, 2020 WL 12175833, at *2 (M.D. Fla. May 6, 2020)(applying Florida law)(citing *TIG Ins. Co. v. United Nat'l Ins. Co.*, 2007 WL 9698302, at *5 (S.D. Fla. Jan. 12, 2007)(emphasis added)); *Harvey*, 259 So.3d at 9 ("evidence must be viewed in the context of the circumstances of each particular case."); *Berges*, 896 So.2d at 680 (stating that each bad faith case "is determined on its own facts"); *Johnson v. Geico Gen. Ins. Co.*, 318

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

Fed. Appx. 847, 851 (11th Cir. 2009); *Losat v. Geico Cas. Co*., 2011 WL 5834689,

\*6 (M.D. Fla. Nov. 21, 2011).  The district court adhered to this appropriate legal

standard throughout trial.

### A. The District Court's Consistent Application of The Totality of The Circumstances Standard.

The court's rulings reflect an adherence to the totality of the circumstances

standard, considering whether Progressive's actions on the claim were reasonable

based on the information it had. The court's statements, highlighted in Ms. Woods'

Brief, emphasize that while the adjusters' beliefs are relevant, they are not the sole

consideration. The court explicitly stated:

> THE COURT: It's what the insurer, in good faith or not, believed the facts would be or would not be. **They could be completely wrong and still act in good faith.** That's the issue for the jury. It's not whether they were right in what—in how they evaluated the case. It's whether they evaluated the case in good faith. That's different.

[DE:228 at 202:1-6 (emphasis added)]. The court's rationale aligns with Florida law,

which permits an insurer to be mistaken in its evaluation as long as it acted in good

faith. *See Vest*, 753 So. 2d at 1275 ("The denial of payment does not mean an insurer

is guilty of bad faith as a matter of law. The insurer has a right to deny claims that it

in good faith believes are not owed on a policy.").

The court's evidentiary rulings did not hinge Progressive's adjusters'

subjective beliefs of the facts, but rather whether those beliefs and claims handling

actions were reasonable within the broader context of the totality of the circumstances. As Ms. Woods, herself, concedes, "[t]he point is that Progressive's adjusters could have subjectively believed that they acted in good faith and Progressive could still be liable for bad faith." [DE 29, at p. 24]. This was the exact approach taken and highlighted by the district court, consistent with the totality of the circumstances standard under Florida law, which does not consider hindsight evidence, such as an excess verdict, to demonstrate that the insurer was ultimately wrong in its' claims evaluation.

The district court, recognizing that the focus of the bad faith inquiry should be on Progressive's conduct during the claims process, properly excluded the UM Verdict because the existence of an excess judgment was irrelevant to the totality of the circumstances. In Florida, "[t]he totality of the circumstances is evaluated by 'the information [the insurer] had available at the time [of its handling of the claim].'" *Harvey v. GEICO Gen. Ins. Co*., 259 So.3d 1, 9 (Fla. 2018). The critical inquiry is whether the insurer timely evaluated and acted upon a claim in good faith, considering all attendant circumstances, and not merely whether the insurer was wrong. *Vest*, 753 So. 2d at 1275. For that reason, Florida law holds that a reasonable disagreement about the value of a claim does not equate to bad faith conduct. *See e.g., id.*; *316, Inc. v. Maryland Cas. Co.*, 625 F.Supp.2d 1187 (N.D. Fla. 2008)("Mere inability to agree to a dollar amount does not prove bad faith on the

part of the insurer."); *see also Fortune v. First Protective Ins. Co.*, 302 So. 3d 485, 490 (Fla. 2d DCA 2020)("Of course, a mistaken denial of payment does not necessarily mean that the insurer acted in bad faith.").

Thus, the focus is not whether the insurer ultimately paid the amounts due under the policy, but whether it acted reasonably—rather in good faith—in evaluating the claim prior to the determination of damages in a UM lawsuit. The totality of the circumstances standard necessarily requires an evaluation of the handling adjuster's conduct, and whether a reasonable prudent person would act similarly in the management of its own business. *See Feijoo v. GEICO Gen. Ins. Co.*, 678 F. App'x 862, 864 (11th Cir. 2017)(affirming grant of insurer's motion for summary judgment where insurer valued claim at less than the medical documentation showed because "its claims adjuster concluded on the basis of her experience that the medical bills seemed excessive."). These principles guided the district court's evidentiary rulings, as the record cited below demonstrates:

> THE COURT: Why? Why does one necessarily lead to the other? Why isn't it completely consistent that the insurance company could have, in good faith, valued the case at less than $300,000 and an independent jury could have valued it differently? One doesn't necessarily imply that the other is wrong. It's just two different people, in good faith, looked at the same facts and reached a different conclusion.
>
> * * *
>
> THE COURT: . . . I am going to overrule your objection. Because here is why. We are going to fundamentally disagree about what this trial is over. **It's not what the facts are or what**

20

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

> the jury ultimately found. **It's what the insurer, in good faith or not, believed the facts would be or would not be. They could be completely wrong and still act in good faith. That's the issue for the jury. It's not whether they were right in what - - in how they evaluated the case. It's whether they evaluated the case in good faith. That's different.** And so that's why I don't think the fact that there's an excess judgment is relevant to whether they acted in good faith or not. Because they are not -- they can be completely consistent with each other.

[*See* ECF No. 228, Jury Trial Vol. 1, 200:18-202:19 (emphasis added)].

The district court's rationale for excluding the UM Verdict was completely in accord with the precedent set forth by the Florida Supreme Court's opinion in *Vest*– "[t]he denial of payment does not mean an insurer is guilty of bad faith as a matter of law. The insurer has a right to deny claims that it in good faith believes are not owed on a policy[,] **[e]ven when it is later determined by a court or arbitration that the insurer's denial was mistaken. . . .**" *Vest,* 753 So. 2d at 1275 (emphasis added. By excluding the UM Verdict and focusing on Progressive claims handling conduct with regard to available information, the court's evidentiary ruling aligned with prevailing Florida law, consistent with the totality of the circumstances standard. *See, e.g., Wopshall v. Travelers Home & Marine Ins. Co*., 2022 WL 611551, at *1 (S.D. Fla. Mar. 1, 2022)(denying a motion for protective order regarding an insurer's non-party subpoena for medical records because the records were relevant to "whether [insurer] knew the extent of Plaintiff's medical expenses, and, therefore, whether it acted in good faith during the investigation of Plaintiff's

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

claim.")(citing *Fridman*, 185 So. 3d at 1228; and *Pelaez v. Government Employees*

*Ins. Co.*, 13 F.4th 1243, 1254 (11th Cir. 2021)).

The court's ruling limited Progressive's presentation of the evidence to what

it knew during its investigation of Ms. Woods' UM claim and allowed Ms. Woods to

rebut whether Progressive's actions were reasonable. For example, Ms. Woods'

counsel questioned Progressives' adjusters on how they arrived at certain values

during their evaluations on the claim:

> MS. MEILER
> Q:   Then when it says: Will consider total meds at 50K, taking
>      a reduction on surgical center as billing is greatly over
>      usual and customary. Can you explain how you arrived at
>      a reduction for cervical center in the bills?
>
> MR. LOPEZ:
> A:   Yes. I would have had a roundtable discussion with
>      Stephanie. That's not something that I would have arrived
>      to alone at that point in time. That would have been relying
>      on some of the prior training that we discussed, talking
>      about letters of protection. Again, the bills here were
>      approximately 83K, but 70K was just from the surgical
>      center, which is just the fee for having the surgery at that
>      location. That was the bulk of it, really, at that point in
>      what they had produced.
>
> Q:   How do you arrive at the numbers that are below, starting
>      with cervical ACDF, and which ultimately totaled to 80 to
>      $120,000?
>
> A:   That's a good question. It's really a culmination of things,
>      culmination of my training, culmination of looking at the
>      facts, looking at what she's telling her providers, looking
>      how that lines up with other evidence, looking at the police
>      report, looking at the photos, relying on my experience and

22

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

> training, and having discussions with chiefly Stephanie,
> about what would be a reasonable figure for this case at
> hand.

[*See* ECF No. 229, Jury Trial Vol. 2, 161:17 – 162:15]. Notably, Ms. Woods cites to

no record evidence to support her allegation that the district court's evidentiary

rulings were based on an improper subjective standard, as opposed to the totality of

the circumstances. At all times during trial, the focus was on Progressive's conduct

and whether its actions were reasonable under the totality of the circumstances.

## B. The District Court Did Not Apply a Subjective Standard that Ignored the Totality of the Circumstances.

Ms. Woods relies on the Florida Supreme Court's decision in *Harvey v.*

*GEICO Gen. Ins. Co*., 259 So. 3d 1 (Fla. 2018), to argue that the district court

wrongfully applied a subjective standard. However, *Harvey* does not exclude the

consideration of an insurer's state of mind; rather, it integrates it within an objective

framework. *Harvey* emphasized that insurers must not act solely based on their

interests and must exercise the same degree of care and diligence as a reasonably

prudent person managing their own affairs. This approach inherently includes an

assessment of the insurer's decision-making process and the information it had at

the time. *Harvey* merely reaffirmed that the totality of circumstances requires a

review of all the facts surrounding a failed insurance claim settlement, and not on

whether the insurer reframed from acted in its own interested and utilized the

obligations set forth in *Boston Old Colony* as a mere checklist. *Id.*, at 11.

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
CASE NO. 23-13407

By excluding the UM Verdict and allowing Progressive to explain its' actions in response to information and demands for settlement, the district court's evidentiary ruling properly focused the jury to consider whether Progressive's actions were reasonable under the totality of the circumstances. The district court did not permit Progressive to present evidence that was akin to a re-litigation of damages, but allowed it to establish what information was available to it at the time it was investigating the Ms. Woods' UM claim. This is entirely consistent with the notion that the critical inquiry of bad faith under Florida law is what the insurer knew at the time it received information, and whether its investigation or adjustment of the UM claim was reasonable based on that knowledge—prior to the determination of damages in the prior UM action.

As reaffirmed by the *Harvey* opinion, in *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980), the Supreme Court of Florida stated, "[t]he insurer must investigate the facts, give fair consideration to a settlement offer that **is not unreasonable under the facts**, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." (emphasis added"). Here, the district court's evidentiary rulings aligned with the appropriate standard, emphasizing the reasonable evaluation of claims based on available information provided and evaluated by the insurer. The district court properly permitted the jury to inquire into what Progressive knew during its

investigation; this was not a re-litigation of damages, but an exploration of whether Progressive's actions were reasonable under the totality of the circumstances, which is the quintessential question in bad faith claims.

The court's approach ensured that the jury assessed whether Progressive's actions during the claims handling process were reasonable based on the information available to it at the time, consistent with the standard articulated in cases like *Fridman*, *Vest*, and *Harvey*, focusing on the insurer's conduct under the context of all relevant circumstances. The exclusion of the UM Verdict did not prejudice Ms. Woods' case but ensured that the jury's focus remained on the relevant issue: whether Progressive acted in good faith during the handling of Ms. Woods' UM claim. As such, any contention that the district court committed an abuse of discretion by applying an incorrect standard of law is meritless and not supported by the record.

## III.   The District Court's Exclusion of the UM Verdict Did Not Result in a Re-litigation of Damages, but Ensured a Fair Trial.

Progressive did not relitigate Ms. Woods' UM damages in the subsequent bad faith trial. Instead, the evidence presented served to illustrate what information was available to Progressive at the time it was adjusting Ms. Woods' UM claim and whether Progressive exercised the same degree of care and diligence as a reasonably prudent person in the management of its' own business.  It was vital for the jury to assess whether Progressive acted in good faith and met its obligations under Florida

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

law. Ms. Woods misconstrues the evidence presented at trial in order to argue that the "district court based its evidentiary ruling on whether Progressive's employe's state of mind was self-interested as opposed to whether their actions could be objectively considered bad faith."

The district court did not focus trial on Progressive's subjective intent. By permitting evidence of Progressive's adjusters' training and rationale behind each and every updated adjustment in the claims process, the district court adhered to the appropriate bad faith standard established by Florida law. It is well-established under Florida law that the bad faith inquiry is not about whether the valuation of a claim was ultimately correct or not, but rather whether the insurer acted reasonably based on information it had at the time. *See Deary v. Progressive Am. Ins. Co.*, 536 F. Supp. 3d 1258, 1267 (S.D. Fla. 2021), *reconsideration denied,* 2021 WL 11960979 (S.D. Fla. Aug. 24, 2021), *and aff'd*, 2022 WL 2916358 (11th Cir. July 25, 2022). The district court's judgment in limiting the type of evidence presented at trial to the information that was known to Progressive at the time of its claims handling adhered to standards applied by the Southern District Court's opinion in *Deary*—stemming from the Florida Supreme Court precedent in *Vest*—focusing on the "totality of the circumstances" to evaluate Progressive's conduct. [*See* ECF No. 228, Jury Trial Tr. Vol. 1, at p. 202:3-10 (Judge Reinhart articulating that the proper issue for the jury

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

was whether Progressive evaluated the claim in good faith, not whether it was ultimately wrong compared to the excess judgment)].

The district court's approach was not just consistent with Florida law; it was mandated by it. The presentation of Progressive's adjusters' "state of mind" as they were adjusting Ms. Woods claim, and whether actions their actions were reasonable under the totality of the circumstances, was not akin to a re-litigation of damages, but a necessary examination to fulfill the quintessential inquiry in bad faith claims under Florida law: Did the insurer fail to settle when, under all the circumstances, it could have should have done so, had it acted fairly and honestly toward its insured and with due regard for her interest? Ms. Woods' contention that the trial focused on Progressive's "subjective intent" is simply a misstatement of the evidence presented at trial. [ECF No. 29, at p. 22].

Ms. Woods argues that "[f]orbidding testimony that Ms. Woods' received an excess verdict gave Progressive another bite at the apple by questioning the causation and extent of Ms. Woods' damages." [DE 29, at 28]. This is a misstatement of the evidence provided to the bad faith jury. Rather, Progressive was rightfully permitted to explain why it did not act in bad faith in its handling of the UM claim, consistent with the Florida Supreme Court's opinion in *Fridman*, 185 So. 3d at 1230. As the district court stated: "[Progressive] could be completely wrong and still act in good faith. That's the issue for the jury. It's not whether they were right in . . .

27

how they evaluated the case. It's whether they evaluated the case in good faith. That's different." [ECF No. 228, Jury Trial Tr. Vol. 1, at p. 202:1-6].

Moreover, the district court's ruling to exclude reference to the excess UM verdict was particularly based on the parties' stipulations; it was not based on a belief that "Florida law applies a subjective standard to determining bad faith," as Ms. Woods incorrectly contends. The bad faith jury properly considered the totality of the circumstances, including Progressive's perception and observations relating to its' adjustment of Ms. Woods' UM claim prior to the final determination of her damages in the underlying UM action. As the district court discussed at trial,

> THE COURT: But you have made an issue on this case the argument that the insurance company is somehow not doing its job because it's taking adversarial positions against Ms. Woods, challenging Ms. Woods, it's negotiating with Ms. Woods. **I am not going to let the witness testify to what the law is, but if he wants to testify this is how I was trained, this is my understanding of how we are appropriately allowed to treat our -- in this setting, what's wrong with that? It goes to his state of mind. It goes to the training, which you brought up about his code of ethics, all the training he takes, all the classes he takes. If that's what he's trained to do, why can't he testify to that?**

[ECF NO. 230, at pp. 50:18-51:19 (emphasis added)].

Here, Ms. Woods' counsel directly put Progressive's adjuster's training at issue, and now seeks to reverse the court's evidentiary rulings in order to alleviate herself from an adverse result. While the district court's evidentiary ruling was not

in error and was consistent with Florida law, Ms. Woods is nevertheless foreclosed from such litigation tactics under the doctrine of invited error. *See Infra* Section V; *See also, Garcia v. GEICO Gen. Ins. Co*., 2013 WL 12085079, at *7 (S.D. Fla. June 14, 2013) ("The doctrine of 'invited error' is implicated when a party induces or invites the district court into making an error . . . . The 'rationale' of the rule is that a party should not benefit from introducing error *at trial*.").

Moreover, Ms. Woods misinterprets the relevance of *Powell v. Prudential Prop. & Cas. Ins. Co.,* 584 So. 2d 12 (Fla. 3d DCA 1991), as it does not support her claim that the underlying verdict must be presented to the jury to determine bad faith liability. In *Powell*, the court emphasized the insurer's duty to initiate settlement negotiations where liability is clear and injuries are serious. However, it does not mandate that the underlying verdict is necessary for determining bad faith liability. The district court's exclusion of the UM Verdict does not contradict the standards established by *Powell*.

Ms. Woods' reliance on cases such as *Powell*, *Fridman,* and *Cope* conflates the issues of damages and bad faith liability. Her argument that the UM Verdict was a necessary predicate to the jury's determination of bad faith represents a misinterpretation of the nature and scope of bad faith lawsuits in Florida. Florida law requires the examination of the insurer's actions in the context of the information it had at the time of the claims process; not an examination based on hindsight

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
CASE NO. 23-13407

evidence suggesting the insurer was wrong. The district court's evidentiary rulings correctly focused the evidence on Progressive's actions during the claims process, ensuring that the jury evaluated whether Progressive acted in good faith based on the information available at the time. This approach is consistent with Florida law, which differentiates between the adjudication of damages and the evaluation of an insurer's bad faith conduct. The court's exclusion of the UM Verdict ensured that the jury assessed Progressive's conduct based on the appropriate totality of the circumstances standard, preventing any re-litigation of issues already decided in the underlying UM case.

In addition, the district court's exclusion of the underlying verdict was necessary to ensure a fair trial. Including the UM Verdict would have shifted the jury's focus from evaluating Progressive's conduct during the claims process to re-assessing the damages awarded in the underlying case. This would have been contrary to the totality of the circumstances standard, prejudicial to Progressive, and would have been a material waste of the court's time. The court's ruling allowed the jury to focus on whether Progressive acted reasonably and in good faith based on the information available at the time, consistent with Florida law. [*See* DE:228 at 202:1-6 ("They could be completely wrong and still act in good faith. That's the issue for the jury. It's not whether they were right in what—in how they evaluated the case. It's whether they evaluated the case in good faith. That's different.")]. The exclusion

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

of the underlying verdict did not prejudice Ms. Woods' case but ensured that the jury's focus remained on the relevant issue: whether Progressive acted in good faith during the claims handling process.

The court's rulings were not an abuse of discretion but a correct application of the totality of the circumstances standard, ensuring a fair and focused deliberation on the bad faith claim. The district court did not err in excluding the UM Verdict nor in its application of the legal standard to Ms. Woods' bad faith claim. Its' rulings were consistent with Florida law, ensuring an objective evaluation of Progressive's conduct under the totality of the circumstances. Ms. Woods' arguments misinterpret the case law she cites, as well as the district court's focus on the critical issues. The exclusion of the UM Verdict prevented re-litigation of damages and ensured a fair trial, consistent with the totality of the circumstances standard under Florida law.

## IV. The District Court's Evidentiary Ruling and Jury Instruction Did Not Disregard the Parties' Stipulated Evidence, But Ensured a Fair Trial and Prevented Manifest Injustice.

Ms. Woods incorrectly contends that the district court erred in excluding the parties' stipulation regarding the UM Verdict without ruling that the stipulation would cause manifest injustice. [DE 29, at 33]. This argument is a red herring; the court did not disregard the stipulation of the UM Verdict. Instead, it set aside the stipulation because it was irrelevant to the issues as it was framed by the stipulations and arguments of Ms. Woods' counsel at trial. The district court never stated that the

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

parties were not bound by the stipulation; it merely questioned the necessity of presenting it to the jury. As the court noted, if the parties agreed and stipulated that the damages element was met as part of Ms. Woods' bad faith lawsuit, there was no need for the jury to hear it. [DE 228, at p. 16].

Bolstering the district court's issue with referencing the UM Verdict to the jury was Ms. Woods' counsel consistent argument at trial that the facts of the underlying UM action were irrelevant to the totality of the circumstances. The district court struggled with Ms. Woods' position, and questioned if she was going to argue that the underlying facts of the UM trial were irrelevant to the bad faith inquiry, then how that jury came to the UM Verdict is irrelevant. [DE 228, at p. 22:2-14]. It would be beyond the temporal scope of the relevant time frame of Progressive's bad faith as it was being framed by Ms. Woods, *i.e.*, the bad faith inquiry stopped at the start of the underlying UM trial. [*Id.*, at p. 16:7-14]. The court articulated this during the proceedings:

> THE COURT: You are going to argue to the jury, obviously, that the insurance company didn't act in good faith in resolving Ms. Woods's claim. When does that stop? Are you going to argue that up to and including to the end of the trial and until today they have continued to act in bad faith? Because if that's the case, I think it's probably relevant that they heard what they heard and have acted on it. If what you are saying to me is, no, we are just going to argue to the jury that prior to the first trial and terminating on the day that we selected a jury in the first trial, that's when their bad faith ended and we are not asking the jury to find

> bad faith after that date, then I might be in a different
> relevance position. So can you clarify that for me?

> MR. MARINO: That is the case. Your Honor is correct. So I think the
> furthest -- the closest to trial we get in terms of any
> testimony or evidence is -- and your Honor has rightfully
> excluded discussions at mediation.

[ECF No. 228, at p. 12:25-13:21].

Mr. Marino (Ms. Woods' counsel) then argued that because the excess verdict is one of the prerequisite elements—*i.e.*, damages—there must be a judgment in excess of the policy limits to bring a bad-faith action against a UM carrier. [*Id.,* at p. 17:11-16]. The district court correctly identified the issues. First, the parties filed a joint stipulation that the court would determine damages should the jury find Progressive liable for bad faith. [*See also* DE 204 ("the Parties have conferred and agreed that the quantification of Ms. Woods' damages can be resolved by the Court post-trial should Ms. Woods prevail at trial. The Parties agree that any claim for damages must be supported by evidence presented by Ms. Woods in said post-trial proceedings.")]. Damages were never at issue for the jury to determine, and the excess verdict was only relevant to the damages Ms. Woods could recover should Progressive be liable. As the court stated:

> THE COURT: I will take judicial notice that there is [an excess verdict].
> And I think Mr. Duke will stipulate that there is. Why does
> the jury then need to hear that if it's agreed that you have
> proven that element?

[ECF No. 228, at p. 17:17:20].

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

The court ultimately decided that the UM verdict would have been unduly prejudicial compared to its probative value to present to the jury because Ms. Woods argued that the bad faith inquiry stopped at the moment the underlying UM trial commenced, making any facts of that case irrelevant to the totality of the circumstances. Yet, she still wanted the bad faith jury to know the amount of the excess verdict to demonstrate Progressive was wrong in its evaluation. The UM Verdict was entered much after the relevant temporal scope of the bad faith inquiry as argued by Ms. Woods' counsel. The court discussed this issue being two-fold:

> **THE COURT**: I think those are the two questions. One is given that there is a stipulation that there was an excess verdict, which is a -- Florida Supreme Court said it is an element of the cause of action, **but if it's stipulated to, we generally don't submit to the jury elements of the -- we don't generally instruct the jury you have to find this and, by the way, it's found. We sort of leave it out.** So that's the first question: Should it be admitted at all? And **secondly, if it is admitted, what evidentiary use can be made of it?** Can argument be made, look, they got a 500-and-some-thousand-dollar verdict, that's almost double the policy limit, that shows they didn't act in good faith. So I believe I framed the issue right."

[DE 228, at p. 148:10-22 (emphasis added)].

The district court determined that the inference Ms. Woods wanted to make was an improper inference from the evidence and would have violated Rule 403 of the Rules of Evidence. [*Id.*, at 158:3-12]. Using the excess verdict to demonstrate an insurer's liability for bad faith is not appropriate under Florida law. As such, because

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

the only issue for the jury to determine was whether Progressive was liable, the court ultimately decided that it would not allow the jury to hear it for risk of substantial undue prejudice to Progressive when compared to the probative value of the evidence.

In this appeal, Ms. Woods argues that the parties are bound by their stipulations and a pretrial stipulation frames the issues for trial, citing *G.I.C. Corp., Inc. v. United States*, 121 F.3d 1447 (11th Cir. 1997), and related cases. The district court's decision to exclude reference to the UM Verdict so that it does not go to the jury and improperly influence their determination of liability does not go against this proposition. The court did not disregard the UM Verdict and the partes agreed to be bound by it. The district court determined that the UM Verdict was only relevant to its' determination of damages, therefore, the jury did not need to hear about it because it is strictly an element to the bad faith action, not a fact that may be used to demonstrate the insurer's bad faith conduct. Had the jury found Progressive liable, the parties would have continued to be bound by the fact and amount of the UM Verdict, post-trial, per the parties joint stipulation. [*See* D.E. 204].

None of the cases Ms. Woods cites supports her proposition that the court disregarded stipulations of fact by denying the fact being referenced to the jury when that fact was held to be irrelevant, or unduly prejudicial, to the issues of the case. All the cases she cites support only the proposition that the parties and the court are

35

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

bound by factual stipulations. Here, the parties were; however, damages simply never became an issue because the jury determined that Progressive was not liable for bad faith. As the *Fridman* opinion and its progeny demonstrate, damages are an element in both first- and third-party bad faith actions. *See Fridman,* 185 So. 3d at 1224-25. Here, the parties were bound by this stipulation that Ms. Woods met the element of damages to a bad faith lawsuit and that the UM Verdict would be used as evidence to support her damages when and if that part of the litigation ensued.

Moreover, as previously discussed, an insurer is permitted to explain its actions and defend that it was not in bad faith. The *Fridman*, *Vest*, and *Harvey* opinions govern this rule of law. Progressive was never permitted to relitigate the underlying breach of contract action, and Ms. Woods was not taken by surprise. The crucial issue of a bad faith lawsuit is whether the insurer failed to act in the best interests of the insured by performing acts that were against their insured's due regard and interests. This standard utilizes the reasonable prudence person analysis. *Harvey*, 259 So. 3d at 7 ("The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.")(quoting *Boston Old Colony*).

This standard necessarily requires an evaluation of the handling adjuster's conduct, their reasoning for their actions, and whether a reasonable prudent person

would act similarly under the totality of the circumstances. *See Feijoo*, 678 F. App'x at 864 (granting summary judgment for the insurer, in part, because the adjuster was reasonable in finding the medical bills were excessive based on her experience). Accordingly, excluding reference of UM Verdict at trial did not result in a "rug pull"; Ms. Woods was always going to have to prosecute her case, and her counsel was always going to have to question the reasonableness of each adjuster's actions taken in handling the UM claim and their rationale in each updated valuation. As the district court advised during the proceedings:

> **THE COURT**: [I]t occurred to me if one is allowed to argue that the existence of or the extent of an excess judgment is relevant, then we have to relitigate the underlying case. It's sort of we go down that slippery slope. But in all fairness, if the plaintiff is allowed to get up and argue, hey, look, they got a verdict that was ten times the policy limit and that shows they acted in bad faith, then I think the other side is entitled to challenge why did the jury arrive at that. So that's what I am struggling with, because I am not sure where I stop once I go through that door.

[DE 228, at p. 148:10-22 (emphasis added)].

> **THE COURT**: We are not retrying the underlying case. . . . The issue for the jury is not whether in fact Ms. Woods was entitled to more than the policy limits or was entitled to the policy limits. The question is whether Progressive, in good faith, concluded she was not. And those are not inconsistent positions. Progressive could very well have, in good faith, concluded we are not going to pay the policy limits, and the jury could have found she was entitled to $600,000, and there's nothing inconsistent about those two things.

[*Id.*, at p. 296:5-16].

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

The district court did not permit Progressive to question causation and the extent of Ms. Woods' damages determined by the underlying UM jury, as she disingenuously suggests. [DE 29, at p. 34]. She simply did not like the fact that she could not use hindsight evidence to support her claim that Progressive acted in bad faith. However, that is not the appropriate standard of law, and it would have ignored the totality of the circumstances in favor of a hindsight-biased trial.

Ms. Woods' contention that the exclusion of the underlying breach-of-contract verdict constituted an abuse of discretion is unfounded when scrutinized against Florida law and the actual proceedings of the trial. A district court has significant discretion to ensure a fair trial by excluding evidence that would confuse the issues, mislead the jury, or waste time to an extent substantially outweighing its probative value. *See* Fed. R. Evid. 403. Florida law requires evaluating an insurer's actions under the totality of the circumstances, which includes assessing whether the insurer acted fairly and honestly toward its insured with due regard for their interests. *See* § 624.155(1)(b)(1), Fla. Stat.; Fla. Std. Jury Instr. 404.4. The district court's decision to exclude the UM Verdict was consistent with this standard.

The district court's approach did not constitute a "rug pull," as Ms. Woods suggests. The district court did not exclude the UM Verdict "without provocation," but rather ensured that the trial remained focused on the critical issue of whether Progressive acted in good faith. However, if any error had occurred in omitting

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

reference to the excess judgment, that error was the consequence of Ms. Woods'

counsel's argument that the bad faith inquiry stopped at the start of the underlying

UM trial. Due to this argument, the district court struggled in understanding the

relevance of the UM Verdict, when Progressive could not have known the outcome

of the underlying trial. [*See* ECF No. 228, at p. 10:20-24].

## V. Alternatively, the Doctrine of Invited Error Precludes Ms. Woods From Claiming the District Court's Exclusion of the UM Verdict as Grounds for Reversal.

If any error had come from the exclusion of the UM Verdict, such error was

the product of Ms. Woods' stipulations and arguments. *See, e.g., Garcia v. GEICO*

*Gen. Ins. Co.*, 2013 WL 12085079, at *7 (S.D. Fla. June 14, 2013). The doctrine of

"invited error" precludes a party from inducing or inviting the court to commit an

error and then attempting to claim that error on appeal as grounds for reversal. *Id.* In

*Garcia v. GEICO Gen. Ins. Co.*, the court confronted a similar scenario in which a

party's own arguments and stipulations contributed to the court's actions during the

trial. In that case, Garcia filed a wrongful death lawsuit against GEICO, which led

to a Coblentz agreement and a substantial jury verdict in Garcia's favor. *Id.*

Following the verdict, Geico sought a new trial and judgment as a matter of law,

arguing, among other points, that the court erred in deciding certain issues as a matter

of law rather than submitting them to the jury. *Id.*, at *6.

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

In ruling on Geico's post-trial motions, the district court applied the doctrine of invited error. The *Garcia* court highlighted that Geico had stipulated that the court would decide the issue of wrongful refusal as a matter of law. Thus, if there was any error in the court's determination, it was one that Geico had invited. *Id.,* at *7. The court cited *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998), which underscores that the invited error doctrine applies when a party induces or invites the court into making an error. The rationale behind this doctrine is that a party should not benefit from introducing error at trial.

Here, Ms. Woods' counsel's stipulation that the district court would determine the issue of damages and their own arguments led to the exclusion of the UM Verdict. By arguing that the bad faith inquiry should stop at the start of the underlying UM trial, Ms. Woods' counsel created confusion regarding the relevance of the UM Verdict. [*See* ECF No. 228, at p. 10:20-24 (Judge Reinhart: "I am still just struggling to understand why something that happens after the fact is somehow now imputed retroactively to show their state of mind when they didn't know it and couldn't have known it at the time.")].

Given the doctrine of invited error, if there was any mistake in omitting the UM Verdict, it was a product of Ms. Woods' own arguments. As in *Garcia*, where the insurer invited the court's decision on a critical issue by stipulating that the court would decide the issue of wrongful refusal as a matter of law, Ms. Woods' stipulation

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

that the court would determine her damages if the jury determined Progressive was liable for bad faith similarly influenced the district court's approach to exclude the UM Verdict because it was not relevant to the issue of liability that was before the jury. Thus, Ms. Woods cannot now claim error on appeal for an issue she invited through her trial strategy. The district court's exclusion of the UM Verdict was not a unilateral or unprovoked action but a response to the arguments presented by Ms. Woods' counsel. The doctrine of invited error precludes Ms. Woods from benefiting from an alleged error that was the direct result of her own litigation strategy, mirroring the situation in *Garcia v. Geico Gen. Ins. Co.* Therefore, any contention that the district court erred in its exclusion should be dismissed under this doctrine.

## CONCLUSION

In conclusion, the district court did not err in excluding the underlying breach-of-contract verdict or in its application of the legal standard to Ms. Woods' bad faith claim. The court's rulings were consistent with Florida law, ensuring an objective evaluation of Progressive's conduct under the totality of the circumstances. The exclusion of the UM Verdict prevented re-litigation of damages and ensured a fair trial, consistent with the totality of the circumstances standard under Florida law. Ms. Woods' arguments misinterpret the case law she cites, and the district court's focus on the critical issues in a bad faith determination. The district court's approach was not only correct but necessary to maintain the integrity of the trial process.

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

Moreover, if any error had occurred, the doctrine of "invited error" prevents Ms. Woods' appeal, because Ms. Woods' counsel: (1) stipulated that the facts after initiation of the prior UM action and leading up to the UM jury verdict were irrelevant for the jury to consider; (2) stipulated that the district court would determine damages, while the bad faith jury would determine Progressive's liability; and (3) consistently argued that the UM Verdict was relevant for the jury to consider to infer that Progressive was wrong and in bad faith. Under these circumstances, the district court excluded reference to the UM verdict in order to minimize its prejudicial effect and ensure a fair trial, as the totality of the circumstances does not consider hindsight evidence.

## CERTIFICATION OF COMPLIANCE

I certify that this Motion complies with the type-volume limitation set forth in Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure. This Motion uses Times New Roman 14-point typeface and contains 13,000 words.

**/s/DEREK L. VELIZ**
**ADAM A. DUKE**
Florida Bar No.: 0055734
aduke@flalawyer.net
**DEREK L. VELIZ**
Florida Bar No.: 113431
dveliz@flalawyer.net
**SEAN M. FARD**
Florida Bar No.: 1017980
sfard@flalawyer.net
Young, Bill, Boles, Palmer,

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

Duke & Thompson, P.A.
One Biscayne Tower
2 South Biscayne Boulevard
Suite 3195
Miami, Florida 33131
Telephone: (305) 222-7720
Facsimile: (305) 492-7729
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of May 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, via-transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**/s/ DEREK L. VELIZ**
**ADAM A. DUKE**
Florida Bar No.: 0055734
aduke@flalawyer.net
**DEREK L. VELIZ**
Florida Bar No.: 113431
dveliz@flalawyer.net
**SEAN M. FARD**
Florida Bar No.: 1017980
sfard@flalawyer.net
Young, Bill, Boles, Palmer,
Duke & Thompson, P.A.

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

One Biscayne Tower
2 South Biscayne Boulevard
Suite 3195
Miami, Florida 33131
Telephone: (305) 222-7720
Facsimile: (305) 492-7729
*Attorneys for Defendant*

*WOODS v. PROGRESSIVE AMERICAN INS. CO.*
*CASE NO. 23-13407*

## SERVICE LIST
### LAUREN WOODS vs. PROGRESSIVE AMERICAN INSURANCE COMPANY
### CASE NO.: 23-13407

**STEPHEN A. MARINO, JR. ESQ.**
**MICHAL MEILER, ESQ.**
**ALESSIA A. ROCHA, ESQ.**
Ver Ploeg & Marino, P.A.
100 S.E. Second Street
Suite 3300
Miami, FL, 33131
Phone: 305-577-3966
Fax: 305-577-3558
smarino@vpm-legal.com
mmeiler@vpm-legal.com
smcgee@vpm-legal.com
mgarcia@vpm-legal.com
arocha@vpm-legal.com
*Attorney for Plaintiff*
*Via Electronic Mail and/or Regular U.S. Mail*

**ELLIOT B. KULA, ESQ.**
**WILLIAM D. MUELLER, ESQ.**
Kula & Associates, P.A.
11900 Biscayne Boulevard
Suite 310
Miami, Florida 33181
elliot@kulalegal.com
william@kulalegal.com
*Attorney for Plaintiff*
*Via Electronic Mail and/or Regular U.S. Mail*