IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 23-13407
LT NO. 9:19-cv-80517-BER

LAUREN WOODS,

*Plaintiff-Appellant*,

v.

PROGRESSIVE AMERICAN INSURANCE COMPANY,

*Defendant-Appellee.*

REPLY BRIEF OF PLAINTIFF-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Stephen A. Marino, Jr.
Michal Meiler
VER PLOEG & MARINO, P.A.
100 S.E. Second St., Ste. 3300
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
smarino@vpm-legal.com
mmeiler@vpm-legal.com

Elliot B. Kula
William D. Mueller
KULA & ASSOCIATES, P.A.
11900 Biscayne Blvd., Ste. 310
Miami, Florida 33181
Telephone: (305) 354-3858
Facsimile: (305) 354-3822
eservice@kulalegal.com
elliot@kulalegal.com
william@kulalegal.com

*Co-Counsel for Appellant*

*Woods v. Progressive Am. Ins. Co.*

<u>**Case No. 23-13407-A**</u>

**CERTIFICATE OF INTERESTED PERSONS
AND
<u>CORPORATE DISCLOSURE STATEMENT</u>**

Plaintiff-Appellant, Lauren Woods, submits this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1.    Boyd Richards Parker & Colonnelli, PL – *Attorney for Defendant/Appellee*

2.    Daniel, W. Aaron, Esq. – *Attorney for Plaintiff/Appellant*

3.    Duke, Esq., Adam A. – *Attorney for Defendant/Appellee*

4.    Fard, Esq., Sean M. – *Attorney for Defendant/Appellee*

5.    Gordon & Partners, P.A. – *Attorneys for Defendant/Appellee*

6.    Hanson, Esq., Mark R. – *Attorney for Plaintiff/Appellant\*

7.    Kula & Associates, P.A., *Attorneys for Plaintiff/Appellant*

8.    Kula, Esq., Elliot B. – *Attorney for Plaintiff/Appellant*

9.    Marino, Esq., Stephen A., Jr. – *Attorney for Plaintiff/Appellant*

10.    Meiler, Esq., Michal – *Attorney for Plaintiff/Appellant*

11.    Mueller, Esq., William D – *Attorney for Plaintiff/Appellant*

12.    Progressive American Insurance Co. – *Defendant/Appellee*

13.    Reinhart, Hon. Bruce E. – *U.S. Magistrate Judge, Southern District of Florida*

*Woods v. Progressive Am. Ins. Co.*

**Case No. 23-13407-A**

**CERTIFICATE OF INTERESTED PERSONS**

**AND**

**CORPORATE DISCLOSURE STATEMENT**
(Continued)

14.    Rocha, Esq., Alessia A. – *Attorney for Plaintiff/Appellant*

15.    Richards, Esq., John Hudson – *Attorney for Defendant/Appellee*

16.    The Progressive Corporation (NYSE: PGR)

17.    Veliz, Esq., Derek L. – *Attorney for Defendant/Appellee*

18.    Ver Ploeg & Marino, P.A – *Attorneys for Plaintiff/Appellant*

19.    Woods, Lauren – *Plaintiff/Appellant*

20.    Young, Bill, Boles, Palmer, Duke & Thompson, P.A. – *Attorneys for Defendant/Appellee*

Pursuant to Federal Rule of Appellate Procedures 26.1 and Eleventh Circuit Rules 26.101 through 26.1-3, Plaintiff/Appellant, Progressive American Insurance Company is an indirect, wholly-owned subsidiary of The Progressive Corporation, which is publicly traded on the NYSE under the symbol PGR. No other publicly held corporation owns ten percent (10%) or more of Progressive's stock.

/s/ **Elliot B. Kula**
Elliot B. Kula

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ........................................................................ ii

SUMMARY OF REPLY ARGUMENT ................................................ 1

    ARGUMENT ....................................................................................3

I.      THE DISTRICT COURT ERRED BY REFUSING TO
       ADMIT THE BREACH-OF-CONTRACT VERDICT
       OR INSTRUCT THE JURY THAT MS. WOODS
       FAVORABLY SETTLED HER CLAIM. ...........................................3

       A.    The Underlying Verdict was Relevant to More
          than Just Damages. .........................................................3

       B.    The District Court Applied the Wrong Legal
          Standard to Ms. Woods' Bad Faith Claim —
          Ignoring the Totality of the Circumstances
          Standard and Forcing a Trial that was Antithetical
          to Florida's Bad Faith Laws. ...........................................7

       C.    The District Court's Evidentiary Ruling and Jury
          Instruction Disregarded Stipulated Evidence and
          Prejudiced Ms. Woods (*i.e., it was a* Rug Pull). .........................9

CONCLUSION ...................................................................................13

# TABLE OF CITATIONS

## *Cases*

*Alper Auto., Inc. v. Day To Day Imports, Inc.*,
   21-14236, 2022 WL 3418643 (11th Cir. Aug. 17, 2022) ...................................10

*Berges v. Infinity Ins. Co.*,
   896 So. 2d 665 (Fla. 2004).........................................................................4

*Cingari v. First Protective Ins. Co.*,
   377 So. 3d 1169 (Fla. 4th DCA 2024) .........................................................6

*CSX Transp., Inc. v. Alabama Dep't of Revenue*,
   888 F.3d 1163 (11th Cir. 2018) ..................................................................11

*F.D.I.C. v. Stahl*,
   89 F.3d 1510 (11th Cir. 1996) ...................................................................11

*Fid. & Cas. Co. of New York v. Cope*,
   462 So. 2d 459 (Fla. 1985).........................................................................4

*Fridman v. Safeco Ins. Co. of Illinois*,
   185 So. 3d 1214 (Fla. 2016)....................................................................5, 6

*GEICO Gen. Ins. Co. v. Paton*,
   150 So. 3d 804 (Fla. 4th DCA 2014) ...........................................................6

*Harvey v. GEICO Gen. Ins. Co.*,
   259 So. 3d 1 (Fla. 2018)..................................................................... 3, 6, 9

*Johnston v. Borders*,
   36 F.4th 1254 (11th Cir. 2022) ..................................................................11

*Kallberg Indus., LLC v. Auto. Experts, Inc.*,
   861 Fed. Appx. 321 (11th Cir. 2021)..........................................................11

*Morrison v. Genuine Parts Co.*,
   828 F.2d 708 (11th Cir. 1987) ...................................................................11

*Powell v. Prudential Prop. & Cas. Ins. Co.*,
   584 So. 2d 12 (Fla. 3d DCA 1991) ..............................................................6

*Progressive Select Ins. Co. v. Lloyd's of Shelton Auto Glass, LLC*,
  2D2023-0490, 2024 WL 2868923 (Fla. 2d DCA June 7, 2024) .........................6

*Safeco Ins. Co. of Illinois v. Fridman*,
  117 So. 3d 16 (Fla. 5th DCA 2013) .........................................................6

*Vital Pharm., Inc. v. Monster Energy Co.*,
  553 F. Supp. 3d 1180 (S.D. Fla. 2021) ...................................................10

### *Statutes*

§ 624.155(1)(b)(1), Fla. Stat. (2023) .........................................................7

### *Rules*

Fed. R. Civ. P. 16(e)..............................................................................10

Fed. R. Evid. 403 ..................................................................................11

## SUMMARY OF REPLY ARGUMENT

Progressive misunderstands the point of this appeal. Mrs. Woods has fully recognized that the underlying breach-of-contract verdict is relevant to the damages portion of her bad faith case, and that it would be at the forefront of the district court's consideration following the parties' stipulation that the district court decide damages. Even so, that underlying Underinsured Motorist verdict (the "UM Verdict") was also relevant, and critical, to the jury's determination of liability. The exclusion of the judgement in her favor deprived the jury of essential context necessary to assess Progressive's actions. The district court's refusal to admit this evidence prevented the jury from evaluating whether Progressive acted fairly and honestly with due regard for Ms. Woods' interests because the jury did not know what those interests (Ms. Woods' damages) were, or that it was already determined that Progressive owed Ms. Woods in excess of her contractual UM benefits.

The district court applied a subjective standard of bad faith because it only allowed the jury to hear half the story. It cannot be said that the district court applied the objective "totality of the circumstances" standard mandated by Florida law because it precluded the jury from understanding the most critical aspect of those circumstances: Ms. Woods' injuries and damages, as best represented by the underlying excess verdict. This error skewed the trial in favor of Progressive by allowing the jury to consider only the insurer's perspective without affording an evaluation of all relevant facts and circumstances surrounding the claim handling.

1

Finally, the district court unilaterally decided to exclude the judgment and verdict (the subject of both pretrial stipulations and joint exhibits) without a finding of manifest injustice.  Progressive's insistence that the district could so disregard a pretrial stipulation under a standard exercise of discretion over evidence (weighing probative value against prejudice) is without any basis in the law.  Without a finding of manifest injustice, this Court's precedent is clear that an abuse of discretion occurred.

For these reasons, Ms. Woods respectfully maintains that this Court reverse the district court's judgment and remand for a new trial governed by the correct application of Florida's bad faith insurance law and the full presentation of relevant, stipulated evidence.

## ARGUMENT

## I.  THE DISTRICT COURT ERRED BY REFUSING TO ADMIT THE BREACH-OF-CONTRACT VERDICT OR INSTRUCT THE JURY THAT MS. WOODS FAVORABLY SETTLED HER CLAIM.

### A.  The Underlying Verdict was Relevant to More than Just Damages.

Central to Progressive's position on appeal is that the contention that the underlying UM Verdict only "related to damages" and "had no bearing on the bad faith inquiry."  Brief of Defendant-Appellee ("AB") at 5.[1]  Progressive takes great pains to distinguish the cases cited by Ms. Woods in her Opening Brief but constructs no legal argument of its own.  Which is to say, Progressive has not identified any Florida decision that has determined that the underlying policy judgment is *not* relevant to a determination of bad faith *liability*—and the cases cited by Ms. Woods in her Opening Brief all seem to indicate that it must be.  Progressive's attempts to distinguish what is the logical foundation for bad faith liability are unsuccessful.

It is undisputed that Florida's insurance bad faith law "imposes a fiduciary obligation on an insurer to protect its insured from a judgment that *exceeds the limits of the insured's policy*."  *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 3 (Fla. 2018) (emphasis added).  Fundamentally, to understand whether the insurer acted in a manner that protected its insured from an excess judgment, the trier of fact must know whether the insured was, in fact, "exposed to an excess judgment."  *Fid. &*

---

[1] Progressive suggests that Ms. Woods "omits" the parties' stipulation in the District Court that the jury would not determine damages.  AB at 6–7.  That's certainly not the case.  *See* Opening Brief of Appellant at 4 n.2 (discussing the stipulation).  The whole point of Ms. Woods' Opening Brief was to build the case that the underlying judgment was also relevant to the determination of liability.

*Cas. Co. of New York v. Cope*, 462 So. 2d 459, 460 (Fla. 1985).  The point of the trial was to determine if Progressive "act[ed] in bad faith in failing to complete the settlement within the time deadlines, thereby insulating its insured from an excess judgment."  *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 679 (Fla. 2004).

Progressive argues that giving the jury information about the underlying UM verdict would provide them the "benefit of hindsight bias."  AB at 9.  Not so.  The point of introducing the judgment and verdict is not to bias the jury, but to give the jury critical information to evaluate Progressive's actions under the "totality of the circumstances" standard.  *Berges*, 896 So. 2d at 680.  The fact that Progressive owed Ms. Woods her full UM benefits, and that her injuries exceeded the value of those benefits, shed light on the credibility of Progressive's claim handling.  The verdict was proof that Ms. Woods' injuries were caused by the accident and that her damages exceeded the limits under the Policy.[2]

The point is that without knowing that Woods' damages were caused by the accident and exceeded her UM limits in this case, it was impossible for the jury to determine whether Progressive's claim handling was sincere and whether its delay in processing Woods' claim was credible.  Trial counsel for Ms. Woods did not stipulate otherwise.  *See contra* AB at 7–8, AB at 39–41.[3]  The District Court asked

---

[2] One can readily imagine a scenario where an insured's damages so far outweigh the policy's limits that they undermine an insurer's justification for delay.

[3] Progressive eventually admits that "Ms. Woods' counsel consistently argued that the UM Verdict was relevant, but the facts considered by the underlying UM jury were irrelevant to the totality of the circumstances because it would result in a re-litigation of damages."  AB at 8.

counsel whether they were going to argue "that there was a continuing bad faith after the beginning of the trial"—which is to say, between which points in time should the court (and the jury) consider whether Progressive acted in bad faith?  DE:228 at 21–23.  To that question, counsel simply agreed that the inquiry should end when the underlying breach-of-contract action began.  *Id*.[4]

Progressive's state of mind cannot be evaluated outside the context of Ms. Woods' damages and the cause of those damages, two elements which are exclusively and legally embodied by the underlying verdict.  Despite the logic behind that notion, Progressive disagrees.  Instead, Progressive argues that Ms. Woods has "misconstrue[d] the rationale" of Florida cases to reach that conclusion.  AB at 9.  Not so.

While *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016), does not "mandate that an underlying verdict is necessary for determining bad faith liability," it makes the case that the verdict is essential.  AB at 10.  Recall, in *Fridman (II)*, the Supreme Court held that an insured is entitled to determination of a possible excess verdict because "the jury's verdict [is] the *true extent of the insured's injuries* and provide[s] a basis to award damages in the inevitable bad faith action the insurer foresaw on the horizon."  *Fridman (II)*, 185 So. 3d at 1224 (emphasis added) (citing

_____

[4] The Court should also note that the district court's back and forth with Woods' counsel occurred when the district court itself believed that "[a]ll that's relevant is … that it was a verdict in excess of the policy limit, because that is an element."  AB at 7 (citing DE:228).  Yet, it was not until after that discussion that the district court retreated from even that position, ultimately deciding not to tell the jury at all that Ms. Woods had successfully prosecuted her breach-of-contract claim (and thus filed a righteous insurance claim with Progressive).

*Fridman (I)*, 117 So. 3d 16, 29 (Fla. 5th DCA 2013)). It should go without saying that the "true extent of the insured's injuries" is a necessary consideration under the "totality of the circumstances" standard applied in Florida.

The other cases Progressive attempts to distinguish all imply similarly. *See Cingari v. First Protective Ins. Co.*, 377 So. 3d 1169, 1174 (Fla. 4th DCA 2024) (reiterating the principle in Florida that "no coverage liability means no bad faith" thus highlighting the importance of the underlying verdict in the bad faith claim); *Progressive Select Ins. Co. v. Lloyd's of Shelton Auto Glass, LLC*, 2D2023-0490, 2024 WL 2868923, at *9 (Fla. 2d DCA June 7, 2024) (discussing bad faith litigation in the context of punitive damages but making clear that the insurer's bad faith could be measured in terms of the discrepancy between insurer's offer and insured's damages); *GEICO Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 807 (Fla. 4th DCA 2014) (commenting on the use of the underlying liability verdict in the bad faith trial: "Geico could have addressed damages in the bad faith trial by arguing that the amount of damages awarded in the first trial could not reasonably have been foreseen, so there was an absence of bad faith.").

They imply it because that is the law in Florida under the totality of the circumstances standard: In a case "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." *Harvey*, 259 So. 3d at 7 (citing *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991) with approval).

6

**B. The District Court Applied the Wrong Legal Standard to Ms. Woods' Bad Faith Claim — Ignoring the Totality of the Circumstances Standard and Forcing a Trial that was Antithetical to Florida's Bad Faith Laws.**

On this point, Progressive first argues that the district court applied the correct standard because it allowed the jury to evaluate the "information the insurer had available at the time of its handling of the claim." AB at 17. The argument is derivative of the first, and it continues to make the point for Ms. Woods. The most important information that Progressive had available to it "at the time of its handling of the claim" was the insured's damages and their likely cause, which the underlying UM verdict represents. AB at 17. By the preclusion of the UM verdict, the jury was not given the benefit of Ms. Woods' damages and was thus not given the "totality of the circumstances" by which to make its ultimate finding of bad faith liability.

Progressive's subjective beliefs only tell half the story. The net effect of the district court's rulings was to preclude the jury from understanding that Ms. Woods was entitled to damages (more than the policy's limits) because she was injured. They were not equipped to determine whether Progressive failed to settle Ms. Woods' claims when, under all the circumstances, it could and should have done so, because it was never told that Ms. Woods' had a viable claim in the first place. Which is to say, the jury was never told about Ms. Woods' "interests" and thus could not evaluate whether Progressive acted in "due regard" for those interests. *See* § 624.155(1)(b)(1), Fla. Stat. (2023); Fla. Std. Jury Instr. 404.4.

Consider, by way of example, the district court's instruction to the jury in the midst of trial, when the court explicitly told the jury that it did not matter what occurred in the underlying trial:

> THE COURT: Thank you very much, ladies and gentlemen. Just so you know, there was a piece of evidence and there was an objection and I ruled on that objection at sidebar. I do want to give you one other instruction now. As you have heard, Mr. Hanson has testified that he is counsel of record for Ms. Woods. You also heard him testify multiple times about another trial. There have been other legal proceedings in this case. Mr. Hanson was a lawyer in one of them. You heard mention of Mr. Richards. Mr. Richards was a lawyer in that case. I am telling you that so you can understand the context of the testimony, so there's a complete picture for you. **Don't concern yourselves with what those proceedings were or what happened in those proceedings. Okay? They don't matter as to why we are here today and whatever decisions you have to make**. I am just allowing you to understand that so you understand the context, that we have had other proceedings. What brings us here today brings us here today. **That doesn't matter to you**. You are here to decide solely the issues that are presented to you here today.

DE:229 at 32–33 (emphasis added). The district court not only refused to instruct the jury on the outcome of that trial but instructed it that did not matter "what happened in those proceedings," which includes that Ms. Woods was deemed to have a viable insurance claim that resolved in excess of the policy limits.

Second to that, Progressive argues that the district court "properly permitted the jury to inquire into what Progressive knew during its investigation" and did not allow a "re-litigation of damages" in the bad faith trial. AB at 24–25. That's only half true. The district court made several on-the-record evidentiary rulings that were based on its articulation of the subjective belief standard that was rejected by the

Florida Supreme Court in *Harvey*, 259 So. 3d at 7. *See* DE:228 at 294–296 (objection made to the admission of Progressive's adjuster's summary of the underlying doctor's report); DE:229 at 32–33 (instruction discussed *supra*). Yet, the district court **precluded** Ms. Woods from testifying about the facts of the accident and insurance claim, which precluded the jury from determining whether the actions of Progressive's employees were credible given the factual circumstances. *See* DE:229 at 252–254.

The District Court allowed Progressive to belittle the veracity of Ms. Woods' reported damages but did not get to hear Ms. Woods' justification for those damages. In short, there can be no objectivity if the jury does not see the full picture. By allowing only Progressive's employees to testify to their subjective beliefs and intent, the district court naturally applied a subjective standard of bad faith, in contravention of Florida law.

## C. The District Court's Evidentiary Ruling and Jury Instruction Disregarded Stipulated Evidence and Prejudiced Ms. Woods (*i.e., it was a* Rug Pull).

Progressive offers a very circular response to the notion that the district court erred by setting aside the parties' pretrial stipulations. AB at 31–40. In one breath, Progressive states that the argument "is a red herring" because the "court did not disregard the stipulation of the UM Verdict" and "never stated that the parties were not bound by the stipulation." AB at 31, 32. And in the very next breath, Progressive states that court "merely questioned the necessity of presenting it to jury" but then also "set aside the stipulation" because it was "irrelevant to the issues" in the case.

9

AB at 31, 32.  It's a dizzying recitation of straight-forward events that occurred at trial:  The district court set aside the parties' agreed-upon stipulations without making a finding of manifest injustice.  *See* Fed. R. Civ. P. 16(e) (allowing a district court to modify a pretrial order "after a final pretrial conference only to prevent manifest injustice").

Instead of finding "manifest injustice" as was required under the rules and law, the district court "ultimately decided that the UM verdict would have been unduly prejudicial compared to its probative value to present to the jury because Ms. Woods argued that the bad faith inquiry stopped at the moment the underlying UM trial commenced, making any facts of that case irrelevant to the totality of the circumstances."  AB at 34.  That's Progressive's own view of what occurred below. *See Id*.  The problem is that a pretrial stipulation is not subject to the standard test for admissibility (probative value vs. prejudice).

A court may "disregard issues of law stipulated by the parties to grant a party relief from that stipulation to prevent manifest injustice."  *Alper Auto., Inc. v. Day To Day Imports, Inc.*, 21-14236, 2022 WL 3418643, at *3 (11th Cir. Aug. 17, 2022) (internal citations omitted).  That condition is inscribed in the district court's local rules: "the pretrial stipulation as so modified will control the course of the trial, and may be thereafter amended by the Court only to prevent manifest injustice."  S.D. Fla. L.R. 16.1(g).  The rule is "pellucid on the applicable (and separate) standard for amending a joint pretrial stipulation."  *Vital Pharm., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180, 1242–43 (S.D. Fla. 2021).

It does not matter whether "[t]he district court determined that the inference Ms. Woods wanted to make [based on the stipulations] was an improper inference from the evidence and would have violated Rule 403 of the Rules of Evidence." AB at 34. *See also* AB at 38 (explaining that the district court has the discretion under Federal Rule of Evidence 403 to exclude evidence). The stipulations were agreed to by both parties. DE:192; DE:217, Ex. C. And this Court "has affirmed the binding nature of pretrial stipulations which have been entered voluntarily and submitted to the court." *F.D.I.C. v. Stahl*, 89 F.3d 1510, 1521 (11th Cir. 1996). Whether the stipulations would have allowed the jury to make an "improper inference" (to be clear, they would not have), that is how the parties decided to "frame[] the issues for trial." *Kallberg Indus., LLC v. Auto. Experts, Inc.*, 861 Fed. Appx. 321, 323 (11th Cir. 2021) (internal citations omitted).

Progressive argues that "[n]one of the cases Ms. Woods cites supports her proposition that the court disregarded stipulations of fact by denying the fact being referenced to the jury when that fact was held to be irrelevant, or unduly prejudicial, to the issues of the case." AB at 35. That's simply not true. This Court has enforced pretrial stipulations, and the requirement that those stipulations only be disregarded in the presence of manifest injustice, time and time again. *See Johnston v. Borders*, 36 F.4th 1254, 1271 (11th Cir. 2022); *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 888 F.3d 1163, 1180 (11th Cir. 2018), *opinion modified on denial of reh'g*, 891 F.3d 927 (11th Cir. 2018); *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709 (11th Cir. 1987). The analysis the district court had to engage in was to determine manifest injustice—not apply the typical evidentiary standard of Rule 403.

11

The district court did not find manifest injustice.  As a result, the jury should have been free to hear these facts consistent with the parties' stipulations:

1. On October 15, 2021, the jury rendered a verdict in favor of Ms. Woods and against Progressive in the amount of $545,760.

2. The jury determined that Ms. Woods suffered a permanent injury as a result of the accident.

3. On November 19, 2021, Final Judgment was entered in favor of Ms. Woods in the amount of $412,208.17.

DE:192.  And, recall, the parties even agreed that the "the verdict form itself [was] a joint exhibit" that the parties were "going to introduce" into evidence.  DE:228 at 14.  *See also* DE:217, Ex. C.  Progressive knew and stipulated prior to trial that Ms. Woods was going to use the "verdict that's in excess of the policy limits" to argue that Progressive "undervalued the claim because a jury ultimately determined that the claim was worth more than what Progressive offered."  *Id.*  No finding of manifest injustice was made prior to these stipulations being discarded.

Making matters worse, the rug was pulled twice.  Not only did the district court initially disregard the pretrial stipulations and joint exhibits when ruling that the excess verdict would not come into evidence, but then the district court announced that the jury would not be instructed *at all* that Ms. Woods prevailed in the underlying litigation.  DE:229 at 5.  The latter ruling came in the middle of trial, after Ms. Woods had already begun litigating her case based on the new reality created by the court's first rug pull.  The district court's ruling that it would not

"allow either party to mention the fact that there is an underlying judgment" was a second fundamental change to the composition of trial.  DE:229 at 12.

Ultimately, the district court's multi-part ruling came without provocation, thus constituting the "rug pull" that Progressive maintains did not happen, and in fact manifested injustice upon Ms. Woods.

## CONCLUSION

The Court should reverse the district court's final judgment following the jury's verdict and remand for a new trial, governed by a correct application of law regarding the presentation of evidence and consistent with the parties' pretrial stipulations.

Respectfully submitted,

| | |
|---|---|
| Stephen A. Marino, Jr. | Elliot B. Kula |
|   Florida Bar No. 79170 |   Florida Bar No. 003794 |
| Michal Meiler | William D. Mueller |
|   Florida Bar No. 86522 |   Florida Bar No. 120124 |
| VER PLOEG & MARINO, P.A. | KULA & ASSOCIATES, P.A. |
| 100 S.E. Second St., Ste. 3300 | 11900 Biscayne Blvd., Ste. 310 |
| Miami, Florida 33131 | Miami, Florida 33181 |
| Telephone: (305) 577-3996 | Telephone: (305) 354-3858 |
| Facsimile: (305) 577-3558 | Facsimile: (305) 354-3822 |
| smarino@vpm-legal.com | eservice@kulalegal.com |
| mmeiler@vpm-legal.com | elliot@kulalegal.com |

By: ___/s/ Stephen A. Marino, Jr.___    By: _____/s/ Elliot B. Kula_____
      Stephen A. Marino, Jr.                        Elliot B. Kula

By: _____/s/ Michal Meiler_____    By: _____/s/ William D. Mueller_____
      Michal Meiler                        William D. Mueller
*Co-Counsel for Plaintiff-Appellant*

13

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses Times New Roman 14-point typeface and contains **3,454** words.

/s/ William D. Mueller

William D. Mueller

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.  I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ William D. Mueller

William D. Mueller
